IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| CRAIG ADAMS and<br>JOSEPH W. KNOPP, III, individually and on behalf of others similarly situated,<br><br>            Plaintiffs,<br>v.<br><br>THE CITY OF KANSAS CITY, MISSOURI,<br>            Defendant. | Case No.    4:19-cv-00093-JTM<br><br>Magistrate Judge W. Brian Gaddy |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Raymond E. Salva, Jr.
BOYD KENTER THOMAS PARRISH, LLC
221 W. Lexington Avenue, Suite 200
Independence, MO 64050
Telephone: 816-471-4511
Facsimile: 816-471-8450
rsalva@bktplaw.com
**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

    I.    INTRODUCTION. ................................................................................ 2

    II.   LEGAL STANDARD FOR SUMMARY JUDGMENT ................................ 3

    III.  LAW AND ARGUMENT

           A.  The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ........................ 4

           B.  The City Violated the FLSA Because it Failed to Include Wage Augments in the Regular Rate for Calculating Plaintiffs' Overtime. ................................................................................................ 6

                1. The Regular Rate ................................................................................ 6

                2. The City failed to properly calculate Plaintiffs' Regular Rate ................................................................................................ 9

    IV.  CONCLUSION .................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Aaron v. City of Wichita, Kansas*, 797 F. Supp. 898, (D. Kan. 1992) .............................. 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................................................................................................... 4

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) .................................................. 6

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 459–60 (1948) .................................... 7

*Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 105 (9th Cir. 1975) ............................ 8

*Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1017 (N.D. Ill. 2013) ..................... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . 3

*City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988) .................................................................................................................. 4

*Featsent v. City of Youngstown*, 70 F.3d 900, 904 (6th Cir. 1995) ................................ 8, 9

*Garcia v. San Antonio Metro Transit Authority*, 469 U.S. 528 (1985) .............................. 5

*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 295 (9th Cir. 1996) ................................................................................................................ 8

*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) ................................................................................................................ 6

*National League of Cities* ................................................................................................... 5

*National League of Cities v. Usery*, 426 U.S. 833 (1976) .................................................. 5

*O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) ................................ 5, 8, 9

*Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 618 (8th Cir.1988) ............................... 4

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ............... 4, 7

*Wheeler v. Hampton Twp.*, 399 F.3d 238, 247, fn. 11 (3d Cir. 2005) ........................... 8, 9

## Statutes

29 C.F.R. § 778.113(a) .............................................................................................. 7

29 C.F.R. § 778.113 ............................................................................................... 7, 8

29 C.F.R. § 778.322 .................................................................................................. 8

29 U.S.C. § 207 ......................................................................................................... 4

29 U.S.C. § 207(a)(1) ................................................................................................ 4

Fair Labor Standards Act, 29 U.S.C. § 201 ............................................................. 10

Pub. L. 81-393, § 6, 63 Stat. 910 ............................................................................... 6

29 U.S.C. § 207(a) ................................................................................................ 4, 5

29 C.F.R. § 778.113(b) .............................................................................................. 7

Pub. L. 93-259, § 6, 88 Stat. 55 ................................................................................. 5

COME NOW Plaintiffs Craig Adams and Joseph Knopp (hereinafter "Adams" and "Knopp") on behalf of themselves and those similarly situated, by and through undersigned counsel pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, and for their Memorandum in Support of Their Motion for Partial Summary Judgment, state as follows:

## I.  INTRODUCTION

Plaintiffs Adams and Knopp are Kansas City firefighters and they bring this collective action to recover earned wages their employer, the Defendant City of Kansas City, Missouri (hereinafter the "City" or "Defendant") failed to pay. The Plaintiffs seek to become class representatives of this collective action on behalf of all International Association of Firefighters Local 42 (hereinafter "IAFF Local 42" or "Local 42") members who are affected by the City's FLSA violations.[1] Local 42 represents firefighters employed by the Kansas City Fire Department (hereinafter "KCFD"), who are engaged in fire suppression, rescue, hazardous material, and emergency medical services.

At relevant times, certain firefighters including Adams and Knopp, pursued and completed elective certifications which entitled them to a nondiscretionary increase of 3-10% over their base salary. *See* Parties' Joint Stipulation of Fact (hereinafter "Stip.," ¶¶ 6, 7, attached hereto as Exhibit 1. The City then required these firefighters to work in excess of the work schedule set forth in the Collective Bargaining Agreement Between City of Kansas City, Missouri and International Association of Fighters, Local 42 (hereinafter the

---

[1] Plaintiffs' Motion to Join Collective Action (Doc. 23) was filed on November 15, 2019. Their Opposition to Decertification (Doc. 552) was filed on September 23, 2020 and is currently pending review by the Court.

2

"CBA[2]") without paying wages at a rate of at least one and one-half times the Regular Rate as required under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter the "FLSA"). Instead, the City applied the aforementioned "specialty" or "certification" pay (hereinafter "wage augments") to straight time only, and calculated FLSA overtime without including wage augments. Stip., ¶¶ 17, 18. These actions by the City were carried out in violation of the FLSA and CBA.

On October 2, 2020, the parties filed a Joint Stipulation of Fact with the Court. (Doc. 554). The parties further agreed to file cross motions for summary judgment based on the facts set forth in the Stipulation. On this motion for partial summary judgment, the stipulated facts clearly show the City failed to include wage augments in the Plaintiffs' FLSA overtime calculations. Plaintiffs' Motion is "partial" in that they have yet to determine the precise amount of damages due to the complex nature of the City's payment methods and its unwillingness to share data critical to tallying the alleged underpayment. Thus, the sole issue before the Court is whether the City failed to include wage augments in the Plaintiffs' FLSA Regular Rate overtime computations. Since the City stipulates to the same, this Court should grant Plaintiffs' Motion as a matter of law.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The initial burden

---

[2] A copy of the CBA is attached as Exhibit 2.

is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 618 (8th Cir.1988).

**III. LAW AND ARGUMENT**

**A. The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* was enacted in 1938 to regulate interstate commerce. The purpose of the act was to improve working conditions for American laborers and to protect workers from excessive hours and substandard wages. The FLSA does not establish a maximum number of hours that may be worked; rather, 29 U.S.C. § 207 dictates that if a covered employee works more than 40 hours in a given workweek, the employer must compensate the employees for the time worked in excess of for the hours at an overtime rate of not less than one-and-one half the regular rate of pay. 29 U.S.C. § 207(a)(1); *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).

In 1974, Congress extended the FLSA to cover public employees, including state, city, county and other government workers. These amendments to the FLSA were challenged by the National League of Cities which took its case to the United States

4

Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833 (1976). The Supreme Court declared that Congress could not require state or local governments to be bound by the FLSA in "... areas of traditional governmental function... " *Id.* at 852. In 1985, *National League of Cities* case was reversed on a 5-4 decision by the Supreme Court in *Garcia v. San Antonio Metro Transit Authority*, 469 U.S. 528 (1985). The application of the overtime and minimum wage provisions of the FLSA for public employees went into effect April 15, 1986.

Also, in 1974, Congress modified the traditional seven-day workweek requirement when it enacted § 207(k) for firefighter and police employees. See Pub. L. 93-259, § 6, 88 Stat. 55 codified at 29 U.S.C. § 207(k). Under that amendment, a public employer could adopt a special exemption permitting the employer to use a longer work period for such public safety employees. In this case, there is no dispute that Local 42 firefighters earn FLSA overtime for hours worked over 212 in a 28-day period. *See* Stip., ¶ 4.

Section 207(a) provides for overtime, but it does not define the specific dollar amount. Congress defined the overtime rate in § 207(a) in terms of a proportionate, or time-and-a half relationship to the "Regular Rate." § 207(a). Consequently, "[c]alculation of the correct [Regular Rate] is the linchpin of the FLSA overtime requirement." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003).

Based on the foregoing, the sole issue on summary judgment is whether, as a factual matter, the City failed to calculate the correct Regular Rate in violation of the FLSA. As stated below, the Regular Rate must include wage augments including "specialty" or "certification" pay. There is no dispute as to the facts relating to this issue. The City
5

Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833 (1976). The Supreme Court declared that Congress could not require state or local governments to be bound by the FLSA in "... areas of traditional governmental function... " *Id.* at 852. In 1985, *National League of Cities* case was reversed on a 5-4 decision by the Supreme Court in *Garcia v. San Antonio Metro Transit Authority*, 469 U.S. 528 (1985). The application of the overtime and minimum wage provisions of the FLSA for public employees went into effect April 15, 1986.

Also, in 1974, Congress modified the traditional seven-day workweek requirement when it enacted § 207(k) for firefighter and police employees. See Pub. L. 93-259, § 6, 88 Stat. 55 codified at 29 U.S.C. § 207(k). Under that amendment, a public employer could adopt a special exemption permitting the employer to use a longer work period for such public safety employees. In this case, there is no dispute that Local 42 firefighters earn FLSA overtime for hours worked over 212 in a 28-day period. *See* Stip., ¶ 4.

Section 207(a) provides for overtime, but it does not define the specific dollar amount. Congress defined the overtime rate in § 207(a) in terms of a proportionate, or time-and-a half relationship to the "Regular Rate." § 207(a). Consequently, "[c]alculation of the correct [Regular Rate] is the linchpin of the FLSA overtime requirement." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003).

Based on the foregoing, the sole issue on summary judgment is whether, as a factual matter, the City failed to calculate the correct Regular Rate in violation of the FLSA. As stated below, the Regular Rate must include wage augments including "specialty" or "certification" pay. There is no dispute as to the facts relating to this issue. The City

stipulates that the Plaintiffs receive incentive pay pursuant to the CBA, and none of those incentives have been included by the City in its calculation of FLSA overtime. Stip., ¶¶ 7-10, 17, and 18. Therefore, the Court should find that all Plaintiffs are entitled to have wage augments (between 3-10%) added to their Regular Rate for FLSA overtime calculations.

### B. The City Violated the FLSA Because it Failed to Include Wage Augments in the Regular Rate for Calculating Plaintiffs' Overtime.

1. <u>The Regular Rate.</u>

As originally enacted, the FLSA contained no definition of the Regular Rate and no rule for its determination. However, in 1949, Congress amended the FLSA by adding language to define the "Regular Rate" and seven elements of compensation that are excluded from the regular rate. Pub. L. 81-393, § 6, 63 Stat. 910. The amendments define "the regular rate... to include all remuneration for employment paid to, or on behalf of, the employee" excluding only eight specific types of payments listed in §207(e). The exclusions are to be "narrowly construed against the employer asserting them" and their application limited to those "plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). None of the exclusion in §207(e) apply to the facts of this case.

The Regular Rate is a matter of mathematical computation from the amount and form of compensation paid an employee. The intent and agreement of the employer and employee are irrelevant in determining the regular rate. *Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) ("The... overtime provisions of the Act are guarantees to individual workers that may not be waived through

6

collective bargaining"). Instead, the Regular Rate must be drawn from what actually happens and must reflect all payment received regularly and exclusive of overtime. *Walling*, 325 U.S. at 424–25 ("[the regular rate] is not an arbitrary label chosen by the parties; it is an actual fact").

The calculation of an employee's Regular Rate begins with a determination of the compensation received by the employee for the workweek. Section 779.113(a) of the federal regulations provides an example for employees earning a weekly salary:

> If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. If an employee is hired at a salary of $350 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $350 divided by 35 hours, or $10 an hour, and when the employee works overtime the employee is entitled to receive $10 for each of the first 40 hours and $15 (one and one-half times $10) for each hour thereafter. If an employee is hired at a salary of $375 for a 40–hour week the regular rate is $9.38 an hour.

29 C.F.R. § 778.113. Accordingly, the first step for determining an employee's Regular Rate is to divide the employee's weekly salary by the number of straight-time hours worked by the employee per week. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 459–60 (1948). The Regular Rate for employees paid on a monthly schedule, as the Plaintiffs are in this case, is computed in the same manner as those with weekly schedules. Section 778.113(b) requires that monthly salaries be converted to their weekly equivalent, with the weekly wage reduced to a regular rate pursuant to § 778.113(a), to wit:

> Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary

is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above.

29 C.F.R. § 778.113; *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 105 (9th Cir. 1975).

From the foregoing authorities, pay is compensation for work, and the Regular Rate must by calculated by dividing all compensation paid for a particular work period by the number of hours worked during that period. *Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 295 (9th Cir. 1996). Section 778.322 of the DOL's regulations adopts the same reasoning and provides in part:

> if an employee whose maximum hours standard is 40 hours was hired at a salary of $200 for a fixed workweek of 40 hours, his regular rate at the time of hiring was $5 per hour. If his workweek is later reduced to a fixed workweek of 35 hours while his salary remains the same, it is the fact that it now takes him only 35 hours to earn $200, so that he earns his salary at the average rate of $5.71 per hour. His regular rate thus becomes $5.71 per hour; it is no longer $5 an hour.

29 C.F.R. § 778.322; *Wheeler v. Hampton Twp.*, 399 F.3d 238, 247, fn. 11 (3d Cir. 2005).

Once the employer agrees to pay wage augments and other forms of compensation to its employees, those amounts must be included in the Regular Rate when calculating the appropriate overtime rate. *Featsent v. City of Youngstown*, 70 F.3d 900, 904-05 (6th Cir. 1995) (FLSA does not permit exclusion of shift differentials, hazardous duty pay, bonuses for education degrees and longevity pay from overtime rate); *O'Brien v Town of Agawam*, 350 F.3d 279, 294-95 (1st Cir. 2003) (shift differential, longevity pay and career incentive pay must be included in regular rate for computation of overtime rate under FLSA);

8

*Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1017 (N.D. Ill. 2013) (specialty pay must be included in the Regular Rate).

        2.      <u>The City failed to properly calculate Plaintiffs' Regular Rate.</u>

Here, the CBA provides that the "regular workweek shall average 49.5 hours per week." *See* Exhibit 2; see also Stip., ¶ 16. In March 2018, Plaintiff Adams earned a monthly salary of $6,214.01. *See* Adams Pay Advice, attached hereto as Exhibit 3. Thus, to arrive at Adams "Base Hourly Rate," i.e., his straight-time rate without incentives, the City performs the following calculation:

    2574 (hours per year) / 12 months = 214.50 (hours per month)

    $6,214.01 (monthly salary) / 214.50 = **$28.97 Base Hourly Rate**

Adams' Base Hourly Rate is **not** the Regular Rate for purposes of calculating overtime. The Regular Rate must include "all remuneration" and cannot be stipulated by the parties. Again, incentive pay (or wage augments) must be included in a firefighter's Regular Rate for purposes of overtime calculation. *Caraballo*, 969 F. Supp. 2d at 1017 ("[incentive payments] are akin to nondiscretionary bonuses [and]... must be included in the regular rate for purposes of overtime"); *Featsent*, 70 F.3d at 904 ("Section (7)(e)(2) does not exclude [hazardous duty pay] from the regular rate"); *Wheeler*, 399 F.3d 238 at 247 (incentive pay must be added to the CBA's basic annual salary in calculating overtime); *O'Brien*, 350 F.3d at (shift differential, longevity, and career incentive pay must be included in the regular rate for overtime calculations).

Plaintiffs' argument if further supported by published Department of Labor ("DOL") opinions. In a September 30, 1999 opinion letter by the Wage and Hour Division, the DOL responded the following inquiry:

> Q. Fire Fighters in City B are paid a 3% premium of their base pay for retaining EMT certifications. This 3% is added to the fire fighters pay every pay period. Does this 3% have to be included when calculating the regular hourly rate of pay?
>
> A. **Yes**. The 3% premium for retaining EMT certification must be included in the employee's regular hourly rate of pay. Section 7(e) of the FLSA requires inclusion in the regular rate "all remuneration for employment paid to, or on behalf of, the employee" except payment specifically excluded by paragraphs (1) through (7) of this subsection.

Opinion Letter Fair Labor Standards Act (FLSA), 1999 WL 1788163, at *1. The DOL's opinion is directly on point to matters at issue here. Plaintiffs' wage augments must be included in the Regular Rate for purposes of calculating overtime.

Pursuant to the CBA, Adams is due a five percent (5%) incentive pay increase to his wage because he holds a HAZMAT or "HAZ2" certification. *See* Stip., ¶ 8(f); Exhibit 3. Adams' Regular Rate, notwithstanding other incentives, such as working out of class, is **$30.42** ($28.97 Base Hourly Rate + $1.45 five percent incentive pay). Using Adams' pay period ending March 8, 2019 as an example, Adams' Regular Rate for calculating overtime when he does not work out of class, should have been **$30.42** not **$28.97** or **$29.87** as expressed on his paycheck stub. *See* Exhibit 3.

When Adams works out of class, at a higher base rate of pay, his Regular Rate increases. Section 778.115 of the DOL regulations provides that:

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than

10

the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.115. Thus, based on a 28-day work period where Adams worked 484.8 total hours and 23.4 hours were out of class at a rate of $1.60 over his base rate, as he did for the 28-day period ending April 6, 2018, Adams' Regular Rate is properly calculated as follows:

$28.97 (Base Hourly Rate) + $1.60 (work out of class rate) x

1.05 (5% incentive pay multiplier) = **$32.10.**

The City payment method as it relates to calculating overtime is consistent with all Local 42 firefighters,[3] is ongoing, and results in payment at a value less than the Regular Rates calculated above. *See* Stip., ¶¶ 17, 18. The City's method is unlawful because it fails to include contractually agreed wage augments in the Regular Rate for overtime calculations and results in underpayment of overtime in violation of the FLSA. Accordingly, as a matter of law, the Court should find that the City has unlawfully failed to include wage augments in its past and current Regular Rate calculations for overtime and grant Plaintiffs' Motion for Summary Judgment.

---

[3] See Plaintiffs' Suggestions in Opposition to Defendant's Motion to Decertify (Doc. 522).

## IV. CONCLUSION

WHEREFORE, based on the foregoing and for the reasons set forth in Plaintiffs' Motion for Partial Summary Judgment filed contemporaneously herewith, Plaintiffs respectfully request this Court issue an Order granting summary judgment in their favor as there are no genuine issues of material fact that the Defendant violated the FLSA in failing to include all remuneration in the Plaintiffs' Regular Rate for overtime calculations and for such other relief as this Court deems just and proper.

Respectfully submitted,

**BOYD KENTER THOMAS & PARRISH, LLC**

_____
Raymond E. Salva, Jr.
Boyd Kenter Thomas Parrish, LLC
221 W. Lexington Avenue, Suite 200
Independence, MO 64050
Telephone: 816-471-4511
Facsimile: 816-471-8450
rsalva@bktplaw.com
**ATTORNEYS FOR PLAINTIFFS**

12
Case 4:19-cv-00093-WBG   Document 557   Filed 10/23/20   Page 15 of 16

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Tara M. Kelly
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
2300 City Hall, 414 E. 12th Street
Kansas City, Missouri 64106
(816) 513-3117 Telephone
(816) 513-3133 Facsimile
tara.kelly@kcmo.org
ATTORNEY FOR DEFENDANT

_____
Attorneys for Plaintiffs