**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI AT KANSAS CITY**

| | |
|---|---|
| CRAIG ADAMS and<br>JOSEPH W. KNOPP, III, individually and<br>on behalf of others similarly situated,<br><br>                       Plaintiffs,<br><br>    v.<br><br>THE CITY OF KANSAS CITY,<br>MISSOURI,<br><br>                       Defendant. | Case No.       4:19-cv-00093-JTM<br><br>Magistrate Judge W. Brian Gaddy |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Doc. 558)**

COME NOW Plaintiffs Craig Adams and Joseph W. Knopp, III, individually and on behalf of others similarly situated (hereinafter "Plaintiffs"), by and through counsel, and state the following as their Memorandum in Opposition to the Defendant's Motion for Summary Judgment:

# TABLE OF CONTENTS

Table of Contents...........................................................................................................ii

Table of Authorities ....................................................................................................iii

STATEMENT OF MATERIAL FACTS ................................................................... 1

I.    Plaintiffs' Response to Defendant's Statement of Material Facts .....................................1

ARGUMENTS AND AUTHORITIES.................................................................... 20

I.    INTRODUCTION .................................................................................................20

II.    SUMMARY JUDGMENT STANDARD .................................................................21

III.    SUMMARY JUDGMENT MUST ISSUE IN PLAINTIFFS' FAVOR……………..………………..22

    A.    Summary judgment must issue in Plaintiffs' favor because the City cannot employ the fluctuating workweek method for calculating local 42 firefighters' overtime. ........................................................................................ ……23

        1. Comparing the two methods for calculating FLSA overtime………………24

        2. The City's fluctuating workweek method for calculating overtime is unlawful under the FLSA because it pays Local 42 firefighters extra money in exchange for extra hours worked in violation of 29 C.F.R. § 778.114(a)(2)…………………………………………………………………..25

            (a) Holdover and Callback Pay violate §778.114(a)(2)…………………26
            (b) Holiday premium pay violates §778.114(a)(2)………………………27
            (c) Court Appearance pay violates §778.114(a)(2)………………………28

    B.    The City fluctuating workweek method for calculating is unlawful under the FLSA because the parties did not share a "clear mutual understanding" that the City will pay a fixed salary regardless of the number of the hours worked. ....………29

    C.    Summary judgment must be denied and liquidated damages are permissible in this case because the City had no reasonable, good faith basis for its failure to properly pay Local 42 firefighters' overtime……………………………………………………………..30

    D.    Summary judgment must be denied as to statute of limitations because the City's FLSA violations were willful or intentional…………………………………………….31

IV. CONCLUSION..................................................................................................... 35

ii

# TABLE OF AUTHORITIES

## *Cases*

*Aaron v. City of Wichita, Kansas, 797 F. Supp. 898, (D. Kan. 1992)* ........................................... 39

*Adickes v. S.H. Kress & Co.,398 U.S 144, (1970).* ....................................................................... 23

*Adeva v. Intertek USA, Inc., CIV.A. 09-1096 (SRC), 2010 WL 97991* ....................................... 29

*Ayers v. SGS Control Servs., Inc., No.03 CIV. 9078 RMB (S.D.N.Y. Feb. 27, 2007)*…….….……29

*Benitez v. Namco Jefferson, LLC, 2015 WL 686921, (W.D. Mo 2015)* ........................................ 23

*Brantley v. Inspectorate A. Corp. 821F.Supp.2d 879, (S.D. Tex.2011)*................................. 29, 30

*Brumley v. Camin Cargo Control, Inc., CIVA 08-1798 (D.N.J. Apr.22, 2010)*………….….…….29

*Caraballo v. City of Chicago, 969 F. Supp. 2d 1008, 1017 (N.D. Ill. 2013)*................... 24, 31, 32

*Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*........... 23

*Coleman v. Jiffy June Farms, Inc., 458 F.2d (5th Cir.1972)*........................................................ 38

*Chao v. Barbeque Ventures, LLC, 547 (8th Cir. 2008)* ................................................................ 33

*Cross v. Arkansas Forestry Commision, 938 F.2d (8th Cir. 1991)* ............................................... 38

*Dacar v. Saybolt, L.P., 914 F.3d 917 (5th Cir. 2018)* ................................................................. 28

*Doden v. Plainfield Fire Prot. Dist., 94 C (N.D. III. Nov. 24, 1995)*…………………………….39

*Dybach v. Florida Dept. of Corrections, 942, F.2d (11th Cir. 1991)*…………………………….35

*Enterprise Bank v. Magna Bank of Missouri, 92 F.3d (8th Cir. 1996)*…………………………….23

*Fenton v. Farmers Ins. Exch., 663 F. Supp.2d 718 (D. Minn. 2009)*…………………………….33

*Foster v. John-Manville Sales Corp., 787 F.2d 390 (8th Cir. 1986)*…………………………….23

*Galindo v. Precision American Corp., 754 F.2d 1212 (5th Cir. 1985)*…………..……………...23, 33

*Hartnagel v. Norman, 953 F.2d 394 (8th Cir. 1992)*……………………………………….....5-16

*Heder v. City of Two Rivers, Wisconsin, 295 F.3d 777 (7th Cir. 2002)*…………….……..24, 31, 22

iii

*Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir.1999)*…………………………………………34

*Jarrett v. ERC Properties, Inc., 211 F.3d 1078 (8th Cir. 2000)*……………………………33, 41

*Local 246 Util. Workers Union of Am. v. S. California Edison Co., 83 F.3d 292, 297 (9th Cir.* 1996) ........................................................................................................................ 37

*Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)* ...................................... 22

*McLaughlin V. Richland Shoe Co., 486 U.S. 128 (1988)* ............................................................ 40

*O'Brien v. Town of Agawam, 350 F.3d 279, 294 (1st Cir. 2003)* ................... 24, 25, 27, 28, 31, 34

*O'Donnell v. U.S., 891 F2d 1079 (3rd Cir. 1989)* ........................................................................ 23

*Regan v. City of Charleston, 142 F. Supp. 3d 442 (D.S.C. 2015)* ...................................... 24, 28-30

*Samuels v. Kansas City Missouri School Dist., 437 F.3d 797 (8th Cir. 2006)*……………………..22

*S. California Edison Co., 83 F.3d 292 (9th Cir. 1996)*……………………………………………..42

*Wheeler v. Hampton Twp., 399 F.3d 238, 247, fn. 11 (3d Cir. 2005)* ............................................ 7

### Statutes

*29 C.F.R. § 778.113(a)* ........................................................................................................... 25, 26

*29 C.F.R. § 778.113* .......................................................................................................... 24, 25, 27

*29 C.F.R. § 216 (b)* ................................................................................................................... 33

*29 C.F.R §778.114 (a)(2)*........................................................................................................ 27-33

*Fair Labor Standards Act, 29 U.S.C. § 201*.......................................................................... 20, 24

<u>**STATEMENT OF MATERIAL FACTS**</u>

**I.** **PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

1.      Specialty "pay, however, shall not be regarded as wages." SSOF1 ¶ 1 and Ex. A, art XII.4.

> **<u>Response</u>**: Objection, the Statement of Stipulated Fact ("SSOF") (Doc. 554) speaks for itself. SSOF is attached hereto as Pl's Ex. 1.

2.      Pay code "ED1" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, Eric Clevenger Aff., ¶ 5; Ex. 2, PeopleSoft screen shots.

> **<u>Response</u>**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

3.      Pay code "ED2" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 7; Ex. 2.

> **<u>Response</u>**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

4.      Pay code "ED3" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 9; Ex. 2.

1

**Response**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

5.      Pay code "ED4" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 11; Ex. 2.

**Response**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

6.      Pay code "HZ1" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 13; Ex. 2.

**Response**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

7.      Pay code "HZ2" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 15; Ex. 2.

**Response**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

2

8.    Pay code "AR1" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 17; Ex. 2.

**<u>Response</u>**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

9.    Pay code "AR2" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 19; Ex. 2.

**<u>Response</u>**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18..

10.    Pay code "P16" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 21; Ex. 2.

**<u>Response</u>**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

11.    Pay code "RSC" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 23; Ex. 2.

**<u>Response</u>**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight*

3

time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

12.     Pay code "SQA" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 25; Ex. 2.

**Response**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

13.     Pay code "FOL" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 27; Ex. 2.

**Response**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

14.     Pay code "TRG" is coded in the City's payroll system to include the amount paid in the remuneration for the FLSA regular rate calculation. Ex. 1, ¶ 29; Ex. 2.

**Response**: Plaintiffs admit the pay code is coded in the City's payroll system and that the pay code is included in the remuneration for FLSA regular rate calculations for *straight* time. Plaintiffs deny the pay code is included in FLSA regular rate calculations for purposes of calculating *overtime*. Pl's Ex. 1, ¶ 18.

15.     Working out of class occurs when an employee works at a higher job classification than that in which he is employed. SSOF ¶ 1 and Ex. A; Ex. 1, ¶ 6.

**Response**: Admit.

4

16.     For a firefighter, working out of class means working as a fire apparatus operator (fire truck driver) or as a captain. Ex. 3, Jean Homer Aff., ¶ 7.

**Response**: Admit.

17.     For a fire apparatus operator, working out of class means working as a captain. Ex. 3, ¶ 8.

**Response**: Admit.

18.     Firefighters receive 14 N-days, also known as Kelly days, a year: one every 9th scheduled day and the remainder to be scheduled by management. SSOF ¶ 1 and Ex. A, art. VI.1.A; Ex. 3, ¶ 9.

**Response**: Objection, the SSOF and Collective Bargaining Agreement ("CBA") speak for themselves. The CBA is attached hereto as Pl's Ex. 2.

19.     N-days, also known as Kelly days, are non-working days that are included in the 49.5 hours paid for an average work week. Ex. 3, ¶ 10.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

20.     Since the City switched to a 28-day, 212-hour lookback in 2012, it has not paid overtime compensation for the hours worked over 99 hours in a pay period unless required by the collective bargaining agreement.2 Ex. 4, ¶ 11.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of

5

the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

21. Regularly scheduled shifts for 24-hour employees are compensated as part of the weekly salary covering 49.5 hours of compensation. Ex. 4, ¶ 12.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

22. Local 42 has long requested a workweek to be set at 49.5 hours a week so that their members earn relatively level pay and do not have "long" and "short" paychecks. Ex. 3, ¶ 11.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). Plaintiffs further object because the phrases "long requested," "long," and "short" are vague and ambiguous.

23. Firefighters are entitled to work shifts outside of their regularly scheduled shifts, if there is a need for such work. Ex. 3, ¶ 12; SSOF ¶ 1 and Ex. A, art VI.3.

**Response**: Plaintiffs object because the word "entitled" is vague and ambiguous. To the extent the word "entitled" suggests firefighters are allowed or permitted to work outside their regularly scheduled shifts, this assertion is denied. Firefighters are *required* at times to work outside their regular shifts. *See e.g.*, "court appearance pay." Pl's Ex. 2, pp. 41-42.

6

24.     When a firefighter works outside of their regularly scheduled shifts, they are paid in the next pay check at the base hourly rate, and is not considered part of the salary covering 49.5 hours. Ex. 4, ¶ 13.

> **Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

25.     If more than 212 hours were worked during the 28-day period, the City will compensate the employee at the base hourly rate for the hours worked in excess of 212 and pay the .5 hours at the FLSA regular rate it has calculated. Ex. 4, ¶ 16.

> **Response**: Plaintiffs admit the City pays at a 0.5 rate. Plaintiffs deny the City pays the FLSA regular rate for overtime. The FLSA regular rate includes all remuneration including wage augments for the purposes of calculating overtime. *Wheeler v. Hampton Twp.*, 399 F.3d 238, 247 (3d Cir. 2005) (incentive pay must be added to the CBA's basic annual salary in calculating overtime). The City stipulates that it does not include wage augments in FLSA overtime calculations. Ex. 1, ¶ 18.

26.     When calculating the FLSA regular rate, the City includes incentives paid for all educational bonuses, language certifications, and assignment pays. Ex. 4, ¶ 17.

> **Response**: Plaintiffs admit the City includes wage augments in straight time. To the extent the FLSA regular rate pertains to overtime, this assertion is denied. The FLSA regular rate includes all remuneration including wage augments for the purposes of calculating overtime. *Wheeler v. Hampton Twp.*, 399 F.3d 238, 247 (3d Cir. 2005) (incentive pay must be added to the CBA's basic annual salary in calculating overtime).

7

The City stipulates that it does not include wage augments in FLSA overtime calculations. Ex. 1, ¶ 18.

27.     The City calculates the FLSA regular rate by adding all earnings for a 7-day period and dividing by the hours worked during that 7-day period. Ex. 4, ¶ 18.

**Response**: Admit.

28.     The City offers a $3.00 per paycheck credit to offset dental, vision, or medical expenses. Ex. 1, ¶ 32.

**Response**: Admit.

29.     The City offers a $20.00 per month wellness credit if the employee voluntarily submits certain health data to the City, thereby allowing the City to track the wellness of its employees and target health programs that most benefit its workforce. Ex. 1, ¶ 33.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

30.     Firefighters working shifts outside of their regularly scheduled shifts are paid straight time under pay code OT@HRRT (also shown as OTR). This means that they were working shifts outside of the regular schedule, therefore "OT," and were paid at the hourly rate, therefore "HRRT." Ex. 4, ¶ 19.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

8

31.    "FIRE REG" is a "no-pay" code, showing the regularly scheduled hours worked during the pay period. It is not paid because regularly scheduled shifts are covered by the weekly 49.5-hour salary. Ex. 4, ¶ 20.

> **Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

32.    "FF KELLY" is a "no-pay" code as Kelly days, or N-days, are included in the compensation that a firefighter receives for a 49.5-hour workweek. Ex. 4, ¶ 21.

> **Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

33.    Pay code "Fire FLSA" (also shown as FSA) deducts the straight time firefighters were paid for their hours over 212. Ex. 4, ¶ 22.

> **Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

34.    Pay code "OVERTIME" pays the hours over 212 at straight time for the hours worked and then at the FLSA regular rate the City has calculated for the premium portion of the overtime. Ex. 4, ¶ 23.

9

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

35.     Pay code "FWR" is the pay code for working out of class. Ex. 4, ¶ 24.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

36.     When "Amounts Only" is checked in the "Effect on FLSA" box in the payroll software, it means that the payroll system will include the amount paid for that pay code in the total remuneration that is used to calculate the FLSA regular rate. Ex. 1, ¶ 30.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

37.     The City disclosed to Local 42 on December 5, 2019 and again on December 16, 2019 that the City was calculating the FLSA regular rate by taking 7 days of earnings and dividing by 7 days of hours instead of taking 28 days of earnings and dividing by 28 days of hours. Ex. 5, ¶ 3.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of

10

the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

38.     The City has designed a fix for its payroll software to calculate the 28 days of earnings for the full lookback period and divide by the hours worked in the 28 days of the full lookback period. That fix is currently in the process of being tested. Ex. 1, ¶ 34.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

39.     When the 28 day earnings divided by 28 day hours fix is finished, the City will perform a recalculation of the FLSA regular rate for the previous two years and will compensate those individuals who were under paid. Ex. 1, ¶ 25; Ex. 5, ¶ 4.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

40.     Local 42 filed Grievance 15-14 in 2014 about the City's failure to include specialty pay when calculating the FLSA regular rate. Ex. 1, ¶ 37; Ex. 6, p. 6-7.

**Response**: Denied. Grievance 15-14 states in pertinent part that "members should be compensated for *overtime* at a rate of their current hourly rate and the hourly rate computed for Educational, Incentive and Special Assignment pay." *See* Grievance 15-14, p. 2, attached hereto as Pl's Ex. 3.

41.    When the City investigated Grievance 15-14, the City determined it was not including specialty pay when calculating the FLSA regular rate. Ex. 1, ¶ 39; Ex. 6, p. 1; Ex. 7, p. 1.

**Response**: Admit.

42.    Following Grievance 15-14, the City reprogrammed its payroll software to include specialty pay in the total remuneration used to calculate the FLSA regular rate. That reprogramming was implemented August 10, 2015. Ex. 1, ¶ 41; Ex. 8, p. 1.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

43.    After the City sustained Local 42's Grievance 15-14, the City recalculated the previous years' FLSA rates and compensated each underpaid individual the back wages they were due. Ex. 1, ¶ 43; Ex. 9.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

44.    The City's recalculation of back wages was applied to the affected individuals' April 8, 2016 pay advices. Ex. 1, ¶ 44; Ex. 9.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of

the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

45.     The City received Exhibit 10 from Gary Reese, the Secretary Treasurer of Local 42 on April 15, 2016. Ex. 1, ¶ 45; Ex. 10.

   **Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

46.     Local 42 filed a third-step grievance, #36-17, on December 7, 2017. Ex. 3, ¶ 15; Ex. 11.

   **Response**: Admit.

47.     Grievance 36-17 was on whether an individual under the CBA was entitled to receive specialty pay for hours worked over 99-hours a pay period. Ex. 3, ¶ 16; Ex. 11.

   **Response**: Admit.

48.     Local 42 filed a fourth-step grievance on Grievance 36-17 on December 28, 2017. Ex. 12, ¶ 3; Ex. 13.

   **Response**: Admit.

49.     On March 8, 2018, the City issued its Fourth Step Grievance opinion for Grievance 36-17. Ex. 12, ¶ 4; Ex. 14.

   **Response**: Admit.

50.     At the hearing, Local 42 "clarified that this grievance is not regarding the FLSA's calculation of non-discretionary bonuses and overtime, and conceded that their members are

being paid in accordance with the FLSA regulations that require non-discretionary bonuses to be included in the calculation of the overtime hourly rate." Ex. 12, ¶ 5; Ex. 14, p. 2.

> **<u>Response</u>**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

51.     In the City's March 8, 2018 Fourth Step Grievance opinion, the hearing officer found "a material difference in the compared language [between Local 3808's CBA and Local 42's CBA] relevant to this grievance. The statement that, 'Such additional pay, however, shall not be regarded as wages' is critical in the resolution of this matter." Ex. 12, ¶ 6; Ex. 14, p. 4.

> **<u>Response</u>**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

52.     On March 13, 2018, Local 42 indicated that it did not agree with the Fourth Step Grievance opinion for Grievance 36-17, and requested arbitration. Ex. 12, ¶ 7; Ex. 15. As of today, no arbitration has been filed. Ex. 12, ¶ 8.

> **<u>Response</u>**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

53.     Plaintiff Craig Adams is in a position that is scheduled to work 24 hours on-duty followed by 48 hours off-duty. Ex. 3, ¶ 17.

**Response**: Admit.

54.     At all times in question, Mr. Adams was entitled to a Hazardous Materials 2 incentive of 5%. Ex. 3, ¶ 18.

**Response**: Admit.

55.     On March 22, 2019, Mr. Adams was in the Fire Apparatus Operator ("FAO"), step 5 pay category. Ex. 3, ¶ 19.

**Response**: Admit.

56.     On March 22, 2019, Mr. Adams was entitled to a monthly salary of $6,336.00. Ex. 3, ¶ 19; SSOF ¶ 1 and Ex. A, app. A.

**Response**: Denied. Adams was entitled to monthly salary of at least $6,652.80, which includes his Hazardous Materials 2 incentive pay. Pl's Ex. 2, p. 69.

57.     Exhibit 16 is a copy of Mr. Adams' March 22, 2019 pay advice,3 an explanation of the codes used on his pay advice, and the overtime calculation for that pay advice. Ex. 1, ¶ 46.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

58.     Exhibit 17 is a copy of Mr. Adams' April 5, 2019 pay advice, an explanation of the codes used on his pay advice, and the overtime calculation for that pay advice. Ex. 1, ¶ 47.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

15

59.    Plaintiff Joseph Knopp III is in a position that is scheduled to work 24 hours on-duty followed by 48 hours off-duty. Ex. 3, ¶ 20.

**Response**: Admit.

60.    At all times in question, Mr. Knopp was entitled to a 3% squad incentive. Ex. 3, ¶ 21.

**Response**: Admit.

61.    In June 2018, Mr. Knopp was in the FF3, step 13 pay category. Ex. 3, ¶ 22.

**Response**: Admit.

62.    In June 2018, Mr. Knopp was entitled to a monthly salary of $5,387.00. Ex. 3, ¶ 22; SSOF ¶ 1 and Ex. A, app. A.

**Response**: Denied. Knopp was entitled to monthly salary of at least $5,548.61, which includes his squad incentive pay. Pl's Ex. 2, p. 69.

63.    Exhibit 18 is a copy of Mr. Knopp's June 29, 2018 pay advice, an explanation of the codes used on his pay advice, and the overtime calculation for that pay advice. Ex. 3, ¶ 48.

**Response**: Plaintiffs object because this paragraph does not set forth a material fact. A fact is only material for purposes of summary judgment if it might affect the outcome of the case under the governing law. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

## II.    PLAINTIFFS' ADDITIONAL MATERIAL FACTS

64.    The City does not pay the augment for hours worked over 99 hours in a pay period. Pl's Ex. 1, ¶ 18.

65.    The City pays strait time or the base hourly rate for the first 212 hours in a 28-day pay period. Pl's Ex 1, ¶ 20.

66.　　An employee may be required to holdover for a reasonable period of time, not to exceed one (1) hour after the end of the shift… if held more than thirty (30) minutes, the employee shall be paid a minimum of one (1) hour at the rate of time and one-half. Pl's Ex. 2, pp. 35-36.

67.　　Any Local 42 Bargaining Unit member who is called back to work after leaving their regular shift shall be compensated for at least (4) hours of work at the rate of time and one-half, regardless of the number of hours worked during that workweek. P's Ex. 2, p. 40.

68.　　Any local 42 Bargaining Unit member whose shift or work day begins on the following named holidays and who actually work on that holiday shall be compensated at the rate of twice the hourly rate for the first ten (10) hour of the shift which starts on the holiday. Pl's Ex. 2, p. 45.

69.　　Any Local 42 Bargaining Unit Members who are not scheduled to work on the holiday shall be paid ten (10) hours of straight time pay at their regular rate, provided they are on pay status for their regularly scheduled workday before an their regularly scheduled workday after the holiday. Pl's Ex. 2, p. 45.

70.　　All members of the bargaining unit who work overtime on the holiday will be paid double time for all hours worked on overtime. Pl's Ex. 2, p. 45.

71.　　Local 42 Bargaining Unit members who are called to testify on behalf of the City or as a witness in a criminal prosecution regarding their investigation or inspection shall be compensated for at least four (4) hours of work; if called by a third party to testify in a civil case regarding their investigation or inspection, they shall be compensated for at least four (4) hours of work. Pl's Ex. 2, pp. 41-42.

72.　　Under the CBA, the City agreed to pay firefighters time-and-a-half or 150% overtime for hours worked in excess of 212 per 28 day work period. Pl's Ex. 2, p. 32.

17

73.     The City's payroll software received modifications affecting firefighter payroll from time to time. *See* Madick, attached hereto as Pl's Ex. 4, 9:12-19.

74.     The City, not the software developer, determines whether or not wage augments are included in overtime calculations. *See* Clevenger, attached hereto as Pl's Ex. 5, 40:8-16.

75.     The City describes "additional pay hourly rate" as pay that is not added to a firefighter's base rate for the purpose of calculating overtime amount but is included in the calculation to determine what the "FLSA overtime" rate will be. *See* Email, Ruth, attached hereto as Pl's Ex. 6.

76.     Grievance 15-14 states in part:

> [Seals and Stenner] fully agree that KCFD is under FLSA exploitation in regards to overtime compensation and that said overtime is paid on hour worked in excess of 212. However, it is our position that overtime should be calculated by taking the total remuneration that an employee receives during that period and dividing that amount by the number of hours that the employee was compensated for working. In short, members should be compensated for overtime at a rate of their current hourly rate and the hourly rate computed for Educational Incentive and Special Assignment pay.

*See* Grievance 15-14, attached hereto as Pl's Ex. 7.

77.     On October 9, 2014, City Controller Eric Clevenger responded to Grievance 15-14 in an email that stated in part:

> We concur with the grievance that an employee's FLSA overtime rate should include the current hourly rate plus the hourly rates computed for Educational Incentive, Special Certification Pay as well as any other applicable payment classifications covered in the regulations.

*See* Email, Clevenger, attached hereto as Pl's Ex. 8.

78.     Under the City's method of calculating overtime, wage augments lose value as the number of hours work increases. Ex. 5, 36:25 - 37:14.

18

79.     Using the § 778.113 method for calculating overtime with wage augments results in a higher regular rate that the "regular rate" calculated by the City using its method. *See* Pehlman Worksheet, attached hereto as Pl's Ex. 9.

80.     At issue in the Local 3808 Arbitration was whether incentive pay should be included in firefighters' overtime calculations. See Arbitration Award, attached hereto as Pl's Ex. 10, p. 4.

81.     Local 3808 argued that receiving incentive pay pursuant to a collective bargaining agreement entitled them to receive overtime that included incentive pay. Pl's Ex. 10, pp. 4-5.

82.     The City argued incentive pay should not be included in Local 3808 firefighters' overtime. Pl's Ex. 10, p. 5.

83.     The Arbitrator sustained the grievance and ordered the City to "pay overtime to the affected employees at 1.5 times an employee's regular pay plus [incentive pay]." Pl's Ex. 10, p. 6.

84.     Eric Clevenger was a witness at the Local 3808 arbitration. Pl's Ex. 5, 42:19 - 43:8.

85.     After the City lost at arbitration it carried out major upgrades to its payroll software to install a compliant payment method for Local 3808 firefighters. *See* Homer, attached hereto as Pl's Ex. 11, 36:23 – 37:4.

86.     After losing the Local 3808 Arbitration, the City did not make any changes to its software for Local 42 firefighters. Pl's Ex. 11, 31:8 – 33:19.

87.     The City's reasoning for different treatment for Local 42 versus Local 3808 with respect to calculating overtime pay, was based on its interpretation of a phrase in the CBA which states that special duty, assignment and certification pay  "shall not be regarded as wages." Pl's Ex. 11, 14:20 – 15:9.

19

88.     Local 42 firefighters did not contract away their FLSA rights in the CBA. Pl's Ex. 1, ¶ 2.

89.     The City decided against adopting the Local 3808 payment method for Local 42 because it would be expensive. Pl's Ex. 11, 37:17 - 38:10.

90.     In Local 42's 2017 Grievance, the Union informed the City that "[p]ayroll only awards the specialty pay for the base 99 hours, but does not include the 5% for any extra hours worked. I was indicated that this same method was being used to calculate other specialty pay categories as well." Def's Ex. 11.

91.     The City responded to Local 42's 2017 Grievance by stating, "While the Union compared its CBA language regarding Special Duty Pay with Local 3808's CBA, I see a material difference in the compared language relevant to this grievance. The statement that, 'Such additional pay, however, shall not be regarded as wages' is critical in the resolution of this matter." Def's Ex. 14.

## ARGUMENTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs Craig Adams and Joseph Knopp III on behalf of those similarly situated currently seek Phase II class certification of this collective action as members of the International Association of Firefighters Local 42 (hereinafter "Local 42") who are affected by the City's violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). Local 42 represents firefighters employed by the Kansas City Fire Department, who are engaged in fire suppression, rescue, hazardous material, and emergency medical services. At relevant times, certain firefighters including Adams, Knopp and all opt-in plaintiffs, pursued and completed elective certifications or "wage augments" which entitled them to a higher rate of pay. The City

then required these firefighters to work in excess of the work schedule set forth in the Collective Bargaining Agreement Between City of Kansas City, Missouri and International Association of Fighters, Local 42 (hereinafter the "CBA") without paying wages at a rate of at least one and one-half times the "regular rate," as that term is defined under the FLSA[1]. Instead, the City applied the regular rate for straight time only, and the pre-incentive base rate for overtime. These actions were carried out by the City in violation of the FLSA and the CBA.

On October 23, 2020, the City filed its Motion for Summary Judgment (Doc. 558) and Suggestions in Support (Doc. 559) (collectively the "Motion"). In its Motion, the City seeks summary judgment on two grounds: first, that it is not violating the FLSA because it includes wage augments in calculating the "premium rate" at which to pay overtime; and second, that it acted in good faith and therefore should not be subject to liquidated damages or the three-year statute of limitations under the FLSA. This Court should deny the City's Motion on the grounds that it unlawfully employs a "fluctuating workweek" payroll method, which results in omission of wage augments from the regular rate for overtime calculations; and the City had no reasonable, good faith basis for its failure to properly include wage augments the firefighters' regular rate, because it willfully refuses to properly pay its firefighters despite years of complaints from Local 42 union leaders.

---

[1] The "regular rate" is the rate "at which an employee is employed [and] shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee…" 29 U.S.C. § 207(e).

Perhaps the most compelling reason for the Court to grant summary judgment in the Plaintiffs' favor[2] on the overtime issue, is the City's admission that it does <u>not</u> include wage augments in FLSA overtime calculations[3]. (SOF 64, 65). To mitigate the devastating effect of its admission, the City drags the Court on a tortuous journey through the layered complexities of its payroll program. This is unnecessary because under the FLSA, wage augments must be included in the regular rate and overtime must be paid at a rate of one and one-half times (150%) the regular rate. The City fails the second element, and therefore summary judgment with respect to overtime payments must issue in favor of the Plaintiffs.

## II. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment is only proper if the evidence, viewed in the light most favorable to the nonmoving party while giving the nonmoving party the benefit of all reasonable inferences, shows that there are no genuine issues of material fact *and* the movant is entitled to judgment as a matter of law. *Samuels v. Kansas City Missouri School Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). The party moving for summary judgment has the initial burden of showing the absence

---

[2] Plaintiffs move for partial summary judgment on the grounds that the City failed to include wage augments in the regular rate for Local 42 firefighter overtime calculations. *See* Plaintiffs' Motion for Summary Judgment (Doc. 556) and Memorandum in Support (Doc. 557).

[3] On October 2, 2020, the parties filed a Joint Stipulation of Fact with the Court (Doc. 554). The parties further agreed to file cross motions for summary judgment based on the facts set forth in the Stipulation. Among those stipulated facts, is an admission by the City that "[t]he City pays the augment for hours worked through 99 in a pay period. The City does not pay the augment for hours worked over 99 hours in a pay period." Ex. 1, ¶ 18. A pay period is two weeks. *Id.* at ¶ 11. FLSA overtime is due for hours worked in excess of 212 over a 28-day period. *Id.* at ¶ 4.

of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996).[4]

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "'that there is an absence of evidence to support the non-moving party's case.'" *Benitez v. Namco Jefferson, LLC,* 2015 WL 686921, *2 (W.D. Mo. Feb. 18, 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). This burden is only met by the movant identifying portions of the record demonstrating an absence of a genuine issue of fact. If the moving party meets this burden, the burden shifts to the non-moving party to set forth facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists if (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. *Id.* at 1.

## III.    SUMMARY JUDGMENT MUST ISSUE IN PLAINTIFFS' FAVOR

### A.    Summary judgment must issue in Plaintiffs' favor because the City cannot employ the fluctuating workweek method for calculating local 42 firefighters' overtime.

In order for the City to prevail on its argument that it is exempt from including wage augments in the Plaintiffs' overtime, it must first persuade this Court to adopt the fiction that Local

---

[4] Further, when a "moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing evidentiary matter is presented." *Foster v. John-Manville Sales Corp.,* 787 F.2d 390, 393 (8th Cir. 1986). Unsupported allegations setting forth ultimate or conclusory facts and conclusions of law are insufficient to support a motion for summary judgment. *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985) (citing C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)). And any "unexplained gaps" in materials submitted by the moving party, if pertinent to the material issues of fact, justify denial of a motion for summary judgment. *O'Donnell v. U.S.,* 891 F.2d 1079, 1082 (3rd Cir. 1989) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-60 (1970)).

23

42 firefighters work a "fluctuating workweek" pursuant to 29 C.F.R. § 778.114. Local 42 firefighters do not work a fluctuating workweek, and as a consequence the City's method for calculating Plaintiffs' overtime is and always has been impermissible under the FLSA. The Department of Labor ("DOL") and numerous federal courts across many circuits hold that municipalities may not apply the fluctuating workweek method of calculating overtime to those employees engaged in law enforcement and fire protection services[5], under circumstances common to this case. Instead, municipal firefighters like those members of Local 42 involved in this lawsuit, are entitled to overtime calculations pursuant to 29 C.F.R. § 778.113. *Regan v. City of Charleston*, 142 F. Supp. 3d 442 (D.S.C. 2015); *Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1021 (N.D. Ill. 2013); *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003); *Heder v. City of Two Rivers*, *Wisconsin*, 295 F.3d 777 (7th Cir. 2002).

### 1. Comparing the two methods for calculating FLSA overtime.

The DOL embraces two FLSA regulations for calculating the regular rate at which an employee is employed for overtime purposes. The first is the "fixed weekly salary" method set forth in § 778.113 and the second is the "fluctuating workweek" method expressed in § 778.114. *O'Brien*, 350 F.3d at 287. The former governs employees who receive a fixed salary for a specific number of hours - e.g., $1,000 for 40 hours, whereas the fluctuating workweek method applies when an employee is paid a fixed salary regardless of how many hours may work in a given week. *Id*. Under these FLSA regulations, fixed weekly salaried employees must receive at a minimum,

---

[5] "[A]nnual salaries which are paid to the firefighters…are considered to be straight-time pay for a fixed, or scheduled, number of hours in each work period, and <u>not fixed salaries for fluctuating hours as discussed in section 778.114 of Part 778</u>. Therefore, appropriate adjustments in the firefighters' pay must be made when they work any number of hours in a work period other than those which are regularly scheduled. *Opinion Letter Fair Labor Standards Act (FLSA)*, 1986 WL 1171126, at *1 (emphasis added).

time-and-a-half or 150% of their regular rate for overtime. Conversely, fluctuating workweek employees must receive a minimum of 50% of their regular rate. *Id*. at 286-87.

> Section 778.113 provides the following:

> If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. If an employee is hired at a salary of $350 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $350 divided by 35 hours, or $10 an hour, and when the employee works overtime the employee is entitled to receive $10 for each of the first 40 hours and $15 (one and one-half times $10) for each hour thereafter. If an employee is hired at a salary of $375 for a 40–hour week the regular rate is $9.38 an hour.

29 C.F.R. § 778.113(a). The same is true for employees who receive a salary for periods other than a workweek. § 778.113(b). In those cases, monthly or annual salary must be reduced to its workweek equivalent. *Id*. Alternatively, employers may elect the fluctuating workweek method, so long as the following four[6] conditions are satisfied:

> (1) the employee's hours must fluctuate from week to week;

> (2) the employee must receive a fixed salary that does not vary with the number of hours worked during the workweek, whether few or many (excluding overtime premiums);

> (3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and

> (4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.

§ 778.114(a); *O'Brien*, 350 F.3d at 288. Section 778.114 further provides examples for proper overtime calculation using the fluctuating workweek method. § 778.114 (b)(1)-(3). These models

---

[6] Section 778.114(a) identifies five conditions, however § 778.114(a)(5) is not at issue in this case.

show that an employer may calculate an employee's hourly rate by dividing a fixed salary amount by number of hours worked. For example, an employee receiving a fixed weekly salary of $600.00 would yield straight (non-overtime) hourly rates as follows:

> Week One: $600 for 37.5 hours = $16.00 per hour.
> Week Two: $600 for 44 hours = $13.64 per hour.
> Week Three: $600 for 50 hours = $12.00 per hour.
> Week Four: $600 for 48 hours = $12.50 per hour.

The overtime rate, under the fluctuating workweek method, is calculated by multiplying the employee's hourly rate by 50%, for pay periods where the employee worked more than 40 hours. From the example above, the employee's Week Two through Four overtime rates and overtime pay are:

> Week Two: $13.64 x 50% = $6.82 per hour x 4 hours = $27.28
> Week Three: $12.00 x 50% = $6.00 per hour x 10 hours = $60.00
> Week Four: $12.50 x 50% =  $6.25 per hour x 8 hours = $50.00

It follows that total pay for Weeks Two through Four are $627.28, $660.00, and $650.00 respectively. § 778.114(b)(1). Using the fixed weekly salary method for calculating overtime, the same employee who receives $600.00 for a 40 hour week  ($15.00 per hour) would receive the following compensation for Weeks Two through Four:

> Week Two: $600.00 + (($600.00/40) x 150%) x (4 hours) = $690.00
> Week Three: $600.00 + (($600.00/40) x 150%) x (10 hours) = $825.00
> Week Four: $600.00 + (($600.00/40) x 150%) x (8 hours) = $780.00

§ 778.113(a).

Clearly, the two methods produce profoundly different results and there is no mystery as to why employers choose the flexible workweek method. In the example above, the employer must pay an employee $1,937.28 for three weeks' of service under the fluctuating workweek method versus $2,295.00 under the fixed salary method. This is a key issue in this case because it provides the basis for the City's payment scheme.

Under the City's "look back" method of reconciling overtime at the end of each 28-day work period, the City adds a "premium" of 50% to all hours worked in excess of 212. (SOF 20, 25). The premium is calculated by adding all remuneration, including wage augments then dividing that amount by the number of total hours worked (straight + overtime). However, since the City does not pay wage augments on hours worked in excess of 198 over the same period (SOF 20), the wage augments represent a <u>disproportionately lower percentage</u> of overtime pay than they otherwise would under a § 778.113 method. The City can only appreciate this underpayment or decay of wage augment impact under a fluctuating workweek method.

In the City's analysis of Adam's pay on page 18 of Defendant's Suggestions, it arrives at "the hour rate at which the premium portion of overtime be (sic) paid" or <u>$30.70</u> per hour. If the City had employed the § 778.113 method, it would have instead added his HAZ2 5% wage augment to his monthly <u>salary</u> to arrive at his regular rate:

$$\$6,336.00 \times 105\% = \$6,652.80$$

$$\$6,652.80 \times 12 = \$79,833.60$$

$$\$79,833.60 \,/\, 2574 = \underline{\$31.02} \text{ regular rate.}$$

Adams' overtime rate is 150% of his regular rate or ($31.02 x 150%) = <u>$46.52</u>. This is greater than the City's calculated rate of $44.89. *See* Def's SIS, at p. 19. Since the City is barred from using the fluctuating workweek method, it must calculate overtime using the foregoing formula.

> **2.    The City's fluctuating workweek method for calculating overtime is unlawful under the FLSA because it pays Local 42 firefighters extra money in exchange for extra hours worked in violation of 29 C.F.R. § 778.114(a)(2).**

As discussed above, employers may not unilaterally elect to pay the lower overtime rate under § 778.114. *O'Brien*, 350 F.3d at 288. "The regulation requires that four conditions be satisfied before an employer may do so," including the requirement that "the employee must

27

receive a <u>fixed salary that does not vary with the number of hours worked during the week</u>."

§778.114(a)(2) (emphasis added); *O'Brien*, 350 F.3d at 288; *Regan*, 142 F. Supp. at 456. The

employer bears the burden of establishing compliance with § 778.114 requirements. *Regan*, 142

F. Supp. at 456. In this case, the City has not met its burden.

**(a)**      **Holdover and Callback Pay violate § 778.114(a)(2).**

In simple terms, the fluctuating workweek method may not be utilized when the employer

offers extra money in exchange for extra hours worked. *Regan*, 142 F. Supp. at 457. Here, the

CBA provides that Local 42 firefighters shall receive extra money for extra hours worked, to wit:

> <u>Holdover Overtime</u>: An employee may be required to holdover for a reasonable
> period of time, not to exceed one (1) hour after the end of the shift… if held more
> than thirty (30) minutes, the employee shall be paid a minimum of one (1) hour at
> the rate of time and one-half. (SOF 66).

***

> <u>Callback Pay</u>: Any Local 42 Bargaining Unit member who is called back to work
> after leaving their regular shift shall be compensated for at least (4) hours of work
> at the rate of time and one-half, regardless of the number of hours worked during
> that workweek. (SOF 67).

Holdover and Callback CBA provisions clearly violate the fixed-salary requirement of §

778.114 because in each instance, the City is obligated to pay its firefighters extra to work hours

and days when they were scheduled to be off-duty. As the *Regan* court explained, "[p]aying an

employee more money to work more hours is precisely the opposite of pay the employee 'a fixed

weekly salary regardless of how many hours the employee may work in a given week.'" 142 F.

Supp. at 458 (quoting *O'Brien*, 350 F.3d at 287). In addition to *Regan* and *O'Brien*, many courts

have held that extra pay in exchange for working extra time is "incompatible with the fixed salary

requirement." See *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 924 (5th Cir. 2018), as amended on denial

of reh'g and reh'g en banc (Feb. 1, 2019) (day-off, offshore, and holiday pay disqualified employer

28

from using fluctuating workweek method); *Brantley v. Inspectorate Am. Corp.*, 821 F.Supp.2d 879, 890 (S.D.Tex.2011) (holding employer violated fixed-salary requirement by paying employees extra for working on scheduled days off); *Brumley v. Camin Cargo Control, Inc.*, CIVA 08-1798 (JLL), 2010 WL 1644066, at *6 (D.N.J. Apr. 22, 2010) (same); *Ayers v. SGS Control Servs., Inc.*, No. 03 CIV. 9078 RMB, 2007 WL 646326, at *10 (S.D.N.Y. Feb. 27, 2007) (same).

These authorities make clear that payment for Holdover and Callback time controverts the City's argument that it pays Local 42 firefighters pursuant to a fluctuating workweek method for purposes of calculating overtime. Whether those firefighters were scheduled to work two or three shifts in alternating weeks or whether the City employed a "look back" process to resolve long and short paychecks is unavailing. *See* Def's SIS, at pp. 10-11. The fact remains that the City agreed to pay (and did pay) those firefighters more than what they were scheduled to receive in any given week, and such compensation was hours-based time-and-a-half, not merely a half-time premium as permitted under § 778.114.

### (b) Holiday premium pay violates § 778.114(a)(2).

Paying employees to work on holidays is incompatible with the fixed-salary requirement under § 778.114. *Regan*, 142 F. Supp. at 460; *Brantley*, 821 F.Supp.2d at 890; *Adeva v. Intertek USA, Inc.*, CIV.A. 09-1096 (SRC), 2010 WL 97991, at *3 (D.N.J. Jan. 11, 2010). Here, the CBA provides that Local 42 firefighters receive additional pay for working holidays, to wit:

> Holidays: Any local 42 Bargaining Unit member whose shift or work day begins on the following named holidays and who actually work on that holiday shall be compensated at the rate of twice the hourly rate for the first ten (10) hour of the shift which starts on the holiday.
>
> ***
>
> Any Local 42 Bargaining Unit Members who are not scheduled to work on the holiday shall be paid ten (10) hours of straight time pay at their regular rate, provided they are on pay status for their regularly scheduled workday before an their regularly scheduled workday after the holiday.

29

***

> All members of the bargaining unit who work overtime on the holiday will be paid double time for all hours worked on overtime.

(SOF 68, 69, 70).

In *Regan*, the court held that the payment of holiday pay, where firefighters earned an additional 9.6 hours of pay by actually working on a holiday, was sufficient evidence to show a violation of § 778.114's requirements. 142 F. Supp. 3d at 460–61. In *Brantley*, the court reached the same conclusion, holding that defendant's payment of premiums for working holidays resulted in plaintiff employees' pay to vary from week to week. 821 F. Supp. 2d at 888–89. This Court should likewise find that the CBA provisions concerning holiday pay here are incompatible with the use of the fluctuating workweek method of calculating overtime. Local 42 firefighters earn an additional ten hours of pay when they "actually work on that holiday." (SOF 68).

### (c)    Court Appearance pay violates § 778.114(a)(2).

Like Holdover, Callback, and Holiday pay, extra pay for court appearances constitutes a violation of § 778.114's fixed-salary requirement. The CBA provides in relevant part:

> Local 42 Bargaining Unit members who are called to testify on behalf of the City or as a witness in a criminal prosecution regarding their investigation or inspection shall be compensated for at least four (4) hours of work; if called by a third party to testify in a civil case regarding their investigation or inspection, they shall be compensated for at least four (4) hours of work.

(SOF 72).

Again, the CBA is clear that Local 42 firefighters receive additional pay for hours dedicated to court appearances. Under a true fluctuating workweek fixed-salary arrangement, firefighters' pay would not deviate from week to week, regardless of whether they appeared for court. Their duty would be encompassed within regular salary. That the City pays at least four (4) hours is

30

another strong indication that § 778.114(a)(2) has been violated and that firefighters do not receive a fixed salary for purposes of calculating overtime.

**B. The City's fluctuating workweek method for calculating overtime is unlawful under the FLSA because the parties did not share a "clear mutual understanding" that the City will pay a fixed salary regardless of the number of hours worked.**

Section 778.114(a)(4) requires that the parties share a "clear mutual understanding" that a fixed salary is compensation for the total hours worked each workweek, regardless of the number of hours. § 778.114(a)(4). It is not enough that the employee receive a fixed minimum sum each pay period. Regulatory compliance requires that the employer pay each employee fixed amount "for whatever hours he is called upon to work in a workweek." *O'Brien*, 350 F.3d at 288; *Heder*, 295 F.3d at 780; *Caraballo*, 969 F. Supp. 2d at 1022. A collective bargaining agreement that provides for overtime payments at time-and-a-half will undermine the application of a fluctuating workweek payment scheme. *Id*.

In *Heder*, firefighters sued a municipality for underpayment of FLSA overtime. 295 F.3d at 778. The defendant city alleged that it was permitted to pay overtime at a reduced rate because it paid its firefighters under a fluctuating workweek system. *Id*. at 779. The court disagreed, holding that

> [Defendant] could not use the "fluctuating workweek" option even if it fit that model, for only a "clear mutual understanding" that the base rate constitutes straight time for any overtime worked enables the employer to calculate pay under the fluctuating workweek plan. *See* 29 C.F.R. § 778.114(a). The collective bargaining agreement does not express a "clear mutual understanding"; to the contrary, <u>it calls for overtime pay at time and a half, or more, for hours in excess of 204 per 27–day period</u>. Every extra hour is calculated and paid for. That is incompatible with treating the base wage as covering any number of hours at straight time.

295 F.3d at 780 (emphasis added).

Relying on the holding in *Heder*, the *Caraballo* court reached the same conclusion: that an agreement to pay overtime at time-and-a-half the regular rate, was inconsistent with the "clear mutual understanding" requirement contained with § 778.114. 969 F. Supp. 2d at 1021-22. In so holding, the court explained:

> In this case, the record evidence shows that there was no clear mutual understanding that the [plaintiffs] would be paid according to the [fluctuating workweek] method. The CBA provides that overtime is to be calculated at a rate of one and half (150 percent) the regular rate. In [response] the [defendant]… explains that it pays [defendants] "FLSA premium pay" at a rate of half (50 percent) of their regular rate for all hours worked between forty and forty-eight, and a rate of one and a half (150 percent) for all hours worked over forty-eight in a week… this payment arrangement does not comport with an understanding that the [defendant] is paying its paramedics under the FWW method. Rather, as its own documents demonstrate, the [defendant] pays [plaintiffs] one rate for overtime and another rate for hours worked over forty.
>
> \*\*\*
>
> As *Heder* teaches, the arrangement provided for in the CBA is inconsistent with the FWW method. Instead, the paramedics' overtime should have been calculated according to the variable workweek method at a rate not less than one and one-half times the regular rate at which he is employed.

*Caraballo*, 969 F. Supp. 2d at 1022 (internal citations and quotations omitted) (emphasis added).

In the case at bar, the City agreed to pay firefighters time-and-a-half or 150% overtime for hours worked in excess of 212 per 28 day work period. (SOF 72) ("Employees on 24-hour shifts shall receive overtime pay at the rate of time-and-one-half for all hours actually worked in excess of 212 hours in any 28-day work period"). In addition, the City pays time-and-a-half for Callbacks and Holdovers (SOF 66, 67), and double-time for holidays. (SOF 68-70). Thus, there was no "clear mutual understanding" that Local 42 firefighters' salary was compensation for the total hours worked each workweek, regardless of the number of hours. § 778.114(a)(4); *Heder*, 295 F.3d at 780; *Caraballo*, 969 F. Supp. 2d at 1022. For these reasons, and for those set forth in section A, *supra*, this Court should deny summary judgment on the issue of whether the City may lawfully

32

employ the "fluctuating workweek" method because (a) it pays Local 42 firefighters extra money in exchange for extra hours worked in violation of 29 C.F.R. § 778.114(a)(2); and (b) the parties did not share a "clear mutual understanding" that the City paid a fixed salary regardless of the number of hours worked by those firefighters. And, while the Plaintiffs have come forward with substantial evidence sufficient for summary judgment to issue in their favor, at the very least, the City has not met its burden by demonstrating an entitlement to the fluctuating workweek.[7]

### C. Summary judgment must be denied and liquidated damages are permissible in this case because the City had no reasonable, good faith basis for its failure to properly pay Local 42 firefighters' overtime.

The City's Motion for Summary Judgment must be denied because it has failed to come forward with sufficient evidence of good faith to avoid liquidated damages. Accordingly, the Plaintiffs' are entitled to liquidated damages as a matter of law in accordance with 29 U.S.C. §216(b). Under § 216(b), an employer who violates the FLSA is liable to the affected employees "in the amount of their unpaid... overtime wages compensation, as the case may be, and in an additional amount as liquidated damages." 29 U.S.C. §216(b). As the language of § 216(b) clearly shows, liquidated damages in FLSA actions are the rule, not the exception. *Chao v. Barbeque Ventures*, LLC, 547 F.3d 938, 941 (8th Cir. 2008) ("liquidated damages [are] mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA") (quoting *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084 (8th Cir.2000); *Fenton v. Farmers Ins. Exch.*, 663 F. Supp. 2d 718, 728 (D. Minn. 2009) (liquidated damages are the norm

---

[7] The City fails to support its argument with any state for federal cases holding that municipal fire departments are permitted to utilize a fluctuating workweek under circumstances and agreements common to this case. Def's SIS, pp. 10-11. Unsupported allegations setting forth ultimate or conclusory facts and conclusions of law are insufficient to support a motion for summary judgment. *Galindo*, 754 F.2d at 1216.

33

in an FLSA action); *O'Brien v. Town of Agawam*, 440 F. Supp. 2d 3, 15 (D. Mass. 2006). The burden of proof rests on the employer. "[B]ut the burden is a difficult one, with double damages being the norm and single damages the exception." *Chao*, 547 F.3d at 941-42 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir.1999).

In *O'Brien* the court held that liquidated damages were appropriate based upon the employer's failure to include longevity and educational incentive pay in its calculation of the FLSA regular rate and corresponding overtime rate. *O'Brien*, 440 F. Supp. 2d at 15 (holding Plaintiffs were entitled to liquidated damages in a sum equal to their unpaid overtime compensation). The City is in an identical situation here. Though it may have made some modifications to its software over the years, the fact remains that the City knowingly adopted and integrated a complex fluctuating workweek method into its PeopleSoft payroll software that short-changed firefighters by diminishing the impact of their wage augments for years.

The City had ample opportunity to discover the flaw in its method. City payroll supervisor, Mary Madick testified at deposition that modifications to the City's payroll software affecting firefighter overtime pay had occurred over the years. (SOF 73). City Controller Eric Clevenger testified that it was the City, not the software developer, that determined whether or not wage augments were to be included in overtime calculations. (SOF 74). Those modifications may have included limited improvements which garnered appreciation from Local 42 in one instance, but the fundamental flaws remained. In January 2017, senior accountant Anne Ruth upheld the fiction that the City's method for calculating overtime was FLSA compliant in her description to others. (SOF 75). This was more than eight months <u>after</u> the City received its "thank you" from Local 42. (SOF 45). Maintaining an improper payment through discretionary software updates and advice to others undermines the City's argument that it acted reasonably and in good faith.

34

The "good faith" element is subjective and requires proof that the employer had an honest intention to ascertain and follow the requirements of the statute. *Id*. The "reasonable" element is an objective one, and ignorance will not save the employer. The question turns on whether the employer was acting as a "reasonable employer" would under all the circumstances. *Dybach v. Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991). The City cannot carry its heavy burden on the facts of this case, to wit:

On September 24, 2014, Konsta Myrick issued a grievance request to Gary O'Bannon, Director of H.R. for the City, regarding Captain Stephen M. Seals' and Captain Stenner's allegation underpayment of overtime in violation of the FLSA. The grievance states in relevant part:

> [Seals and Stenner] fully agree that KCFD is under FLSA exploitation in regards to overtime compensation and that said overtime is paid on hour worked in excess of 212. However, it is our position that overtime should be calculated by taking the total remuneration that an employee receives during that period and dividing that amount by the number of hours that the employee was compensated for working. In short, members should be compensated for overtime at a rate of their current hourly rate and the hourly rate computed for Educational Incentive and Special Assignment pay.

(SOF 76). City Controller, Eric Clevenger responded to the grievance on October 9, 2014, stating:

> We concur with the grievance that an employee's FLSA overtime rate should include the current hourly rate plus the hourly rates computed for Educational Incentive, Special Certification Pay as well as any other applicable payment classifications covered in the regulations.

(SOF 77). And yet, the same Eric Clevenger, at his October 16, 2019 deposition was confronted with the same information from Plaintiff Adams' paycheck stub as in the example above, stated the following:

> Q.   But the what you identify as the FLSA regular rate, the 29.951930, <u>is not five percent greater than the regular rate identified up above as 28.969737</u>.
>
> A.   <u>That's correct</u>.
>
> Q.   It's something less than five percent.

A.    Based upon total hours, the 71.70 is five percent over their base pay.

Q.    So wouldn't it be true that if a worker worked more overtime than we see in this example, the difference between the regular rate of 29.969737 and the FLSA regular rate would close.

A.    <u>Yes. Based upon the FLSA calculations that we're required to perform, yes</u>.

(SOF 78) (emphasis added).

In sum, Clevenger knew as early as September 2014 that the City should have been including incentive pay in its regular rate calculations for overtime. However, in the six years since, nothing has changed. Clevenger's attempt to dodge the obvious - that the City for years has miscalculated the regular rate for overtime - was undermined by KCFD Fiscal Officer, Joe Pehlman. At deposition, Pehlman was presented the same information as above and provided a calculator to manually calculate Adams' regular rate pursuant to the § 778.113 method. Pehlman calculated that Adams' regular rate was $30.418 <u>not</u> $28.97 or $29.87 expressed on Adams' paycheck stub. (SOF 79).

In August 2017, the City was a party to a grievance arbitration hearing involving IAFF Local 3808 firefighters. Local 3808 consists of a bargaining unit of battalion chiefs and others which is separate from IAFF Local 42, the unit to which the Plaintiffs belong. The issue before the arbitrator is identical to the issue here: whether incentive pay should be included in the regular rate for purposes of calculating overtime. (SOF 80). Local 3808 argued that overtime for its members receiving incentive pay pursuant to its collective bargaining agreement should properly be paid as Plaintiffs argue here. (SOF 81). The City argued that incentive pay should not be included in the regular rate. (SOF 82). The Arbitrator sustained the grievance and ordered the City to "pay overtime to the affected employees at 1.5 times an employee's regular pay plus [incentive pay]" (SOF 83). Mr. Clevenger was a witness at the arbitration hearing. (SOF 84).

While the Arbitrator rejected an FLSA analysis to reach his conclusions. The result would have been the same: all remuneration, including wage augments must be included in the regular rate and firefighter overtime must be 150% of the regular rate. (SOF 83); § 778.113. After the City lost at arbitration it carried out major upgrades to its payroll software to install a compliant payment method for Local 3808 firefighters. (SOF 85). But the City did not make any changes to its software for Local 42 firefighters. (SOF 86). The City's reasoning for this disparate treatment was based on its interpretation of a phrase in the CBA which states that special duty, assignment and certification pay "shall not be regarded as wages." (SOF 87). This is flawed reasoning, because as the City admits, Local 42 firefighters did not contract away their FLSA rights in the CBA. (SOF 88); *Local 246 Util. Workers Union of Am. v. S. California Edison Co*., 83 F.3d 292, 297 (9th Cir. 1996) ("The... overtime provisions of the Act are guarantees to individual workers that may not be waived through collective bargaining")

Finally, on December 28, 2017, Local 42 filed a grievance against the City on the same grounds as those then pending in the Local 3808 grievance. The City ultimately rejected Local 42's grievance. KCFD Assistant to the Fire Chief, Jean Homer stated the reason Local 42's grievance was denied was "one, they had been paying... this incentive over a period of time, something like ten years, without any objection and that the Collective Bargaining Agreement states something different than it does for 3808, including a statement that I believe says 'these bonuses would not be considered wages,' or something to that effect." (SOF 87). Ms. Homer further justified denial of Local 42's grievance with the following:

> Q.   And you identified that in the CBA. And you also gave the jury some reason based on the language in the CBA for why it wasn't included in the overtime.
>
> A.   Correct.

Q.      Did you have any discussions with any of the people that we have mentioned so far as to how that would work in -- how that would work in real life, I mean, how it would -- the difference that it would make if the calculation were pursuant to the 3808 decision and how it currently is?

A.      You mean that it would be expensive.

Q.      Yes.

A.      Yes.

Q.      And what -- tell me about those -- or tell the jury about those discussions, please.

A.      I really don't have much to say, except that it was mentioned that it would be expensive the make that change.

(SOF 89).

The evidence in the record clearly demonstrates the City fails both the objective and subjective and objective tests described above. Indeed, the summary judgment record reflects no good faith intention, honest or otherwise, to ascertain and follow the requirements of the statute. The opposite is true since it had opportunities to comply with the FLSA over the years and demurred. Further, the City has offered no grounds or conduct, reasonable or otherwise, to believe its actions were not in violation.

Regarding subjective, "good faith" tests, federal courts have been very selective in finding that an employer acted with good faith necessary to avoid liquidated damages. Good faith sufficient to escape liquidated damages include proof of reliance on conclusions from DOL officials, proof of reliance on erroneous advice from attorneys, and proof of the formation of a committee to review proper overtime rates and then having an outside attorney review the committee's plan. *Cross v. Arkansas Forestry Commission*, 938 F.2d 912 (8th Cir. 1991) (Conclusions from DOL officials); *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.

38

1972) (Erroneous advice from attorneys); *Aaron v. City of Wichita, Kansas*, 797 F. Supp. 898, (D. Kan. 1992) (Committee, outside attorneys).

The City's argument that it "relied on the language of the FLSA, the Code of Federal Regulations, and pertinent Wage and Hour opinions in adding non-discretionary bonuses to… overtime" is unpersuasive. See Def's SIS, at p. 25. A cursory review of pertinent Wage and Hour opinions would have led the City to a lawful method of calculating overtime. The November 19, 1986 DOL FLSA Opinion is directly on point with the relevant issues here. It states explicitly:

> [A]nnual salaries which are paid to the firefighters… are considered to be straight-time pay for a fixed, or scheduled, number of hours in each work period, and not fixed salaries for fluctuating hours as discussed in section 778.114.

Opinion Letter Fair Labor Standards Act (FLSA), 1986 WL 1171126, at *1 (emphasis added).

Thus, none of the subjective, "good faith" tests in the foregoing authorities are evidenced from the record in this case. There is nothing in the record to support City's claim that it relied on external or legal authorities in developing its unlawful payroll system. In fact, the City knew over the years that its regular rate overtime calculations were unlawful; its payment methods were adjudicated as unlawful in binding arbitration; and that obeying the law would be "expensive." (SOF 6, 25). Accordingly, given the undisputed facts, as a matter of law there can be no "good faith" grounds for the City's FLSA violations as outlined herein.

Federal courts have been similarly selective in finding the employer's conduct was reasonable under the objective standard sufficient to avoid liquidated damages. For example, in *Doden v. Plainfield Fire Prot. Dist.*, 94 C 6294, 1995 WL 699719 (N.D. Ill. Nov. 24, 1995), the court found reasonable conduct when a Fire District failed to pay proper overtime rates but showed "remarkable effort" in attempting to do so by discussing overtime requirements with other fire

departments, conferring with attorneys and then quickly changing its overtime compensation when court decisions on paramedic issues began to be decided against employers. *Id*. at *3.

Nothing in the record reflects a remarkable effort on the part of the City to properly pay overtime. The City has shown no conduct indicating any attempt whatsoever to comply with the FLSA, other than hollow expressions with no material changes. On its failure to calculate the regular rate and work out of class for its firefighters, there is neither "good faith" intention nor "reasonable" conduct to excuse liquidated damages. The record reflects an irrefutable set of circumstances in which Plaintiffs are entitled to statutory liquidated damages. The City's motion for summary judgment on this issue must fail. At a minimum, there are fact issues in dispute which must be resolved by the jury.

### D.    Summary judgment must be denied as to statute of limitations because the City's FLSA violations were willful or intentional.

Under the FLSA, an action to recover unpaid overtime compensation is barred unless commenced within two years after the cause of action accrues. Plaintiffs may recover three years' back pay if they show the employer's violation was willful, that is the employer knew it was violating the FLSA or showed reckless disregard for complying with the law. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). "Willful" is synonymous with "voluntary," "deliberate," and "intentional" but requires more than conduct that is merely negligent. *Id*. To establish willfulness under the FLSA, plaintiffs must prove the employer knew or showed reckless disregard for the matter of whether its conduct violated the Act. *Id*. If the employer acts reasonably in determining its legal obligation, its action cannot be deemed willful. *Id*. at 135 n.13. If an employer acts unreasonably, but not recklessly, in determining its FLSA obligations, its conduct is not willful. *Id*.

40

Since the willful or reckless standard under § 255(a) is more rigorous than the threshold for liquidated damages under § 260, an award of liquidated damages typically follows a finding of willfulness or recklessness. "'[I]t is hard to mount a serious argument' that an employer who has acted in reckless disregard of its FLSA obligations has nonetheless acted in good faith." *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1084 (8th Cir. 2000). As demonstrated above, the City's conduct satisfies the willful or reckless standard.

In *Jarrett*, an aggrieved employee sued her employer for FLSA violations alleging that she was denied overtime compensation despite her status as a salaried, non-exempt employee. 211 F.3d at 1083. At trial the plaintiff introduced evidence of an employee manual indicating her proper classification, in addition to testimony from other employees that they were also improperly denied overtime. *Id*. Two of the plaintiff's supervisors instructed her to record only 40 hours on her time sheets. *Id*. Defendant employer failed to introduce evidence refuting the plaintiff's evidence. *Id*. The court held that on the evidence presented, the defendant recklessly disregarded its obligations under the FLSA. *Id*. at 1084.

The facts in this case are no less compelling. First, the CBA states that special duty, assignment and certification pay shall be paid at an additional rate "above what [the firefighter's] salary would otherwise be." This is clearly false. To be true, the City would have to add specialty pay to firefighters' salary. From the example above, Adams salary would have increased from $6,336.00 to $6,652.80 (+5%) and that simply does not happen under the City's complex payment scheme. This occurs every payday and the City is well aware that its method is unlawful. *See* section C, *supra*.

Second, in Local 42's 2017 Grievance, the Union informed the City that "[p]ayroll only awards the specialty pay for the base 99 hours, but does not include the 5% for any extra hours

worked. I was indicated that this same method was being used to calculate other specialty pay categories as well." (SOF 90). The City responded by stating:

> While the Union compared its CBA language regarding Special Duty Pay with Local 3808's CBA, I see a material difference in the compared language relevant to this grievance. The statement that, "Such additional pay, however, shall not be regarded as wages" is critical in the resolution of this matter.

(SOF 91). Conspicuously missing from the City's response was any legal analysis, which was reckless. Again, employees cannot contract away their FLSA rights to overtime through collective bargaining. *S. California Edison Co.*, 83 F.3d at 297. The measure of the City's recklessness has now accrued because this lawsuit arose from the City's rejection of the 2017 Grievance.

Finally, the testimony of Jean Homer that changes to the City's payroll software to provide equal treatment among the bargaining units was rejected out of concern over the budget, is strong evidence of willfulness. The City chose economy over the law. Taken together, the City's conduct clearly demonstrates something more than mere negligence. The City has an impressive staff of talented attorneys at its disposal. It knew the lawful path and <u>chose</u> another. This Court should deny the City's motion for summary judgment as to statute of limitations and issue an Order that Local 42 firefighters may recover three years' of back pay, rather than two. At a minimum, genuine issues of material fact remain for the jury.

## IV.   CONCLUSION

WHEREFORE, based on the foregoing Plaintiffs respectfully request this Court issue an Order denying the City's Motion for Summary Judgment in Plaintiffs' favor and against the City because the City cannot employ the fluctuating workweek method for calculating Local 42 firefighters' overtime; liquidated damages are permissible because the City had no reasonable, good faith basis for its failure to properly pay overtime; the three-year statute of limitations applies

due to the City's willful and reckless conduct; and for such other relief as this Court deems just and proper.

Respectfully submitted,

**BOYD KENTER THOMAS & PARRISH, LLC**

/s/ Ray Salva, Jr.
Raymond E. Salva, Jr.
Boyd Kenter Thomas Parrish, LLC
221 W. Lexington Avenue, Suite 200
Independence, MO 64050
Telephone: 816-471-4511
Facsimile: 816-471-8450
rsalva@bktplaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Tara M. Kelly
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
2300 City Hall, 414 E. 12th Street
Kansas City, Missouri 64106
(816) 513-3117 Telephone
(816) 513-3133 Facsimile
tara.kelly@kcmo.org
ATTORNEY FOR DEFENDANT

/s/ Ray Salva, Jr.
Attorneys for Plaintiffs

43