IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **CRAIG ADAMS and JOSEPH KNOPP,** | ) | |
| **Individually and on Behalf of Others** | ) | |
| **Similarly Situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-CV-00093-W-WBG** |
| | ) | |
| **CITY OF KANSAS CITY, MISSOURI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER AND OPINION (1) DENYING DEFENDANT'S MOTION TO
DECERTIFY COLLECTIVE ACTION AND (2) GRANTING DEFENDANT'S
MOTION TO REMOVE INDIVIDUALS FROM COLLECTIVE ACTION**

Several motions are currently pending before the Court. Docs. 534, 536, 556, 558, 567.

This Order sets forth the Court's decisions on Defendant's Motion to Remove Individuals from

Conditionally Certified Class (Doc. 534) and Defendant's Motion to Decertify Class (Doc. 536).

## I.   PROCEDURAL HISTORY

Plaintiffs Craig Adams and Joseph Knopp are employed as firefighters with Defendant

City of Kansas City, Missouri ("the City"). In January 2019, Plaintiffs, on behalf of themselves

and others similarly situated, filed this matter in the Circuit Court of Jackson County, Missouri,

alleging the City erroneously calculated overtime pay for firefighters, violating the Fair Labor

Standards Act ("FLSA"). Doc. 1-1.[1] In February 2019, the City removed the matter to this Court.

Doc. 1.

In November 2019, Plaintiffs moved for conditional certification of an FLSA collective

action, which the City opposed. Docs. 23-24, 27, 29. In January 2020, the Honorable John T.

---

[1] Plaintiffs also alleged a breach of contract claim; however, in September 2020, the parties stipulated to the dismissal of the breach of contract claim without prejudice. Doc. 544.

Maughmer, United States Magistrate Judge, granted Plaintiffs' motion and conditionally certified a collective action consisting of current and former firefighters employed by the City who received certification or incentive pay at any time since January 10, 2016. Doc. 45. Pursuant to the Court's Order, those firefighters were notified of the collective action and instructed to submit a consent form if they wanted to join the collective action. *Id.* at 7. According to Plaintiffs' counsel, 474 individuals submitted consent forms by the April 14, 2020 deadline.[2] Doc. 531; *see also* Docs. 49-529 (filed consent forms).

On August 21, 2020, the City filed motions asking the Court to remove individuals from the conditionally certified collective action and decertify the collective action. Docs. 534, 536. On September 10, 2020, the Court granted the parties' joint request to stay briefing in this matter pending mediation. Docs. 545-46. After the mediation, the Court granted the parties' requests for additional time to respond to pending motions and provided a new deadline for dispositive motions. Docs. 548-50. On September 23, 2020, Plaintiffs filed their opposition to the City's motion to decertify the collective action (Doc. 552) but did not file any opposition to the City's motion to remove individuals from the collective action. The City did not file a reply in further support of its motion to decertify the collective action.

On September 28, 2020, this matter was transferred to the undersigned, and on October 19, 2020, the parties consented to the undersigned's jurisdiction. Docs. 553, 555, 555-1. Since that time, both parties filed motions for summary judgment, and Defendant filed a motion for leave to file a sur-reply in further support of its summary judgment, all of which remain pending. Docs. 556, 558, 567. This Order only addresses the City's motion to decertify the collective action and

---

[2] It is unclear if the number provided by Plaintiffs is correct. The Court was notified in August 2020 that two collective action members died. Doc. 535. Ostensibly, the number of collective action members would be reduced to 472; however, the City represents there are 459 collective action members. Doc. 536, at 5 n.4. Regardless of whether there are 472 or 459 collective action members, the Court's analysis of the pending motions remains unchanged.

the City's motion to remove individuals from the collective action. The remaining motions will be decided in a separate order issued at a later date.

## II.     THE CITY'S MOTION TO DECERTIFY THE COLLECTIVE ACTION

### A.     Conditional Certification of FLSA Collective Action

The FLSA mandates an employer may not subject non-exempt employees to a work week in excess of forty hours, unless the employee is compensated for his or her overtime with additional pay of at least one and one-half times his or her regular hourly wage. 29 U.S.C. § 207. "[A]ny one or more employees for and on behalf of himself or themselves and other employees similarly situated" may bring a collective action against an employer for unpaid overtime. *Id.* § 216(b). The FLSA does not define "similarly situated," but the Eighth Circuit has held "Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (citation and internal quotations omitted), *aff'd and remanded*, 136 S. Ct. 1036 (2016).

As noted in the Court's Order conditionally certifying the collective action, the Eighth Circuit has not adopted a particular standard for certification of a collective action. But this Court and a majority of district courts in the Eighth Circuit[3] apply the two-step analysis adopted by the Fifth Circuit. Doc. 45, at 2 (citations omitted); *see also Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1066 (W.D. Mo. 2020) (citations omitted); *Larson v. Isle of Capri Casinos, Inc.*, No. 16-

---

[3] *See, e.g., Harris v. Ratner Steel Supply Co.*, No. 3:20-CV-00112-KGB, 2021 WL 473735, at *1-2 (E.D. Ark. Feb. 9, 2021); *Deutsch v. My Pillow, Inc.*, No. 20-cv-318 (SRN/ECW), 2020 WL 7351556, at *5 (D. Minn. Dec. 15, 2020); *Hampton v. Maxwell Trailers & Pick-Up Accessories, Inc.*, No. 2:18CV110 HEA, 2020 WL 1888798, at *1-2 (E.D. Mo. Apr. 16, 2020); *Myers v. Iowa Bd. of Regents*, 458 F. Supp. 3d 1075, 1084 (S.D. Iowa 2020); *Turner v. Concentrix Servs., Inc.*, No. 1:18-cv-1072, 2020 WL 544705, at *3-4 (W.D. Ark. Feb. 3, 2020); *Bertroche v. Mercy Physician Assocs., Inc.*, No. 18-CV-59-CJW-KEM, 2019 WL 4307127, at *23 (N.D. Iowa Sept. 11, 2019); *Eastep v. KRH, Inc.*, No. 1:19-cv-004, 2019 WL 10945122, at *1 (D. N.D. July 9, 2019); *Martinez v. Cargill Meat Sols.*, 265 F.R.D. 490, 496 (D. Neb. 2009). The Court was unable to locate a decision issued by the District of South Dakota indicating whether it also utilizes the two-step analysis.

Case 4:19-cv-00093-WBG   Document 569   Filed 03/30/21   Page 3 of 14

00902-CV-W-ODS, 2018 WL 6495074, at *15 (W.D. Mo. Dec. 10, 2018); *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 362-63 (W.D. Mo. 2007) (citations omitted).

The first step involves a motion for conditional certification for notification purposes. Doc. 45, at 2. At this step, the plaintiffs must make a "modest factual showing sufficient to demonstrate that they and the putative class members were victims of a single decision, policy, or plan." *Brackett v. St. Louis Bd. of Police Comm'rs*, No. 4:12-CV-898-JAR, 2014 WL 1377460, at *2 (E.D. Mo. Apr. 8, 2014) (citation and internal quotations omitted). As mentioned *supra*, section I, the Court conditionally certified this collective action, and potential collective members were notified and given the opportunity to join the collective action.[4] *Id*. at 3-8.

## B. Legal Standard for Decertification of FLSA Collective Action

At the second step, the employer may move to decertify the FLSA collective action if, after conducting discovery, the evidence establishes the members of the conditionally certified collective action are not similarly situated. *See Fast*, 243 F.R.D. at 363. When considering a motion to decertify, the Court weighs factors such as "disparate factual and employment settings of the individual plaintiffs, including whether plaintiffs were affected by a common decision, plan or policy"; "various defenses available to defendant which appear to be individual to each plaintiff"; and "fairness and procedural considerations." *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (citations omitted); *Kautsch v. Premier Commc'ns*, No. 06-CV-4035-NKL, 2008 WL 294271 at *2 (W.D. Mo. Jan. 31, 2008); *see also Harris v. Express Courier Int'l, Inc.*, No. 5:16-CV-05033, 2017 WL 5606751, at *3 (W.D. Ark. Nov. 21, 2017) (citation omitted); *Rikard v. U.S. Auto Prot., LLC*, No. 4:11CV1580 JCH, 2013 WL 5552688, at

---

[4] Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, a person does not become a party to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

*3 (E.D. Mo. Oct. 4, 2013) (citations omitted). When faced with a motion to decertify, the collective action members must "demonstrate a 'reasonable basis' for their claim of a class-wide violation." *Kautsch*, 2008 WL 294271 at *1 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)).

Even if the collective action members' factual and employment settings differ and the employer's defenses are individualized to the plaintiffs, this Court "must balance those factors with the fundamental purpose of 29 U.S.C. § 216(b)." *Id.* at *2 (citation omitted). Section 216(b)'s fundamental purpose is "to lower the costs to the plaintiffs through the pooling of resources" and "limit the controversy to one proceeding which efficiently resolves 'common issues of law and fact that arose from the same alleged activity.'" *Id.* (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000)); *see also Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); *Rikard*, 2013 WL 5532688, at *3 (citations omitted).

## C.     Discussion of the Pending Motion to Decertify the Collective Action

The City asks the Court to decertify the collective action because individual defenses predominate, a collective action is not procedurally efficient in this matter, and collective adjudication would violate the City's right to due process. Doc. 536. Plaintiffs oppose the City's motion, arguing the matter should proceed as a collective action. Doc. 552.

### (1)     *Factual and Employment Settings of Individual Plaintiffs*

The City's motion to decertify references the first factor this Court must consider when deciding a motion to decertify – i.e., "disparate factual and employment settings of the individual plaintiffs, including whether plaintiffs were affected by a common decision, plan or policy." Doc. 536, at 2. However, the City raises no argument as to why this factor weighs in favor of (or against)

5

decertification. Instead, the "factual background" of the City's motion states certain "credentialed and cross-trained" individuals were allowed "additional compensation" in the form of "special duty, assignment, and certification pay[ ]." Doc. 536, at 1-2 (citation omitted). This statement suggests the collective action members were affected by the same policy.

Plaintiffs' response to the City's motion confirms the collective action members were affected by the same policy. That is, they are or were entitled to a higher rate of pay based on completed certifications, advanced education, executing special duties, and/or fulfilling certain responsibilities. Doc. 552, at 1-2, 6; Doc. 552-1. Although permitted to do so, the City did not file a reply to Plaintiffs' opposition, and thus, did not dispute Plaintiffs' arguments and evidence establishing the collective action members' pay was determined in the same manner and pursuant to the same policy.

Because they were affected by the same policy, the collective action members are similarly situated. *See Kautsch*, 2008 WL 294271, at *1. The same evidence will be utilized to prove or disprove the policy, the policy's application to the collective action members, and the City's actions in carrying out the policy. Accordingly, the same evidence will be used to prove or disprove the collective action members' FLSA claim against the City. *See Bouaphakeo*, 765 F.3d at 796 (holding "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'") (citation omitted); *see also Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1281 (D. Kan. 2012) (finding a policy or plan that applies to the whole class weighs in favor of collective action treatment). For these reasons, the Court finds the factual and employment settings of collective action members weigh in favor of collective action treatment.

*(2)*     ***Individualized Defenses***

The City argues the collective action must be decertified because it has "several defenses available to it which must be considered on an individual, not collective, basis." Doc. 536, at 3. "The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Drake v. Steak N Shake Operations, Inc.*, 286 F. Supp. 3d 1040, 1047 (E.D. Mo. 2017) (citation omitted). Defenses such as timeliness, unclean hands, and judicial estoppel are unique to the individual and generally favor decertification. *Id*. However, defenses pertaining to issues of damages do not preclude collective adjudication. *See Shoots v. iQor Holdings US, Inc.*, 325 F.R.D. 253, 279 (D. Minn. 2018); *Judkins v. Southerncare, Inc.*, 74 F. Supp. 3d 1007, 1014 (S.D. Iowa 2015) (citation omitted); *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1024-25 (D. Minn. 2007).

In its motion, the City discusses three defenses that it claims are individualized. Doc. 536, at 3-4. First, the City maintains premium payments, such as pay for time not worked (e.g., a holiday), can be credited or offset against overtime compensation due to an employee. *Id*. Second, the City argues the premium pay will vary for each member of the collective action because it depends on several factors, including but not limited to holiday hours worked, detail allowances, and callback hours. *Id*. Third, the City argues "[w]hether an underpayment was *de minimis* will also be an individual defense." *Id*. at 4. Because of the "number of differences in their pay calculations," the City argues the collective action members are not similarly situated, and an evidentiary hearing would have to be held to determine each collective action member's damages. *Id*. at 4-5.[5]

---

[5] The City uses the damages arguments regarding the individualized damages factor and for fairness and procedural considerations. Doc. 536, at 3-5. The Court's analysis is the same under both, and therefore, not repeated *infra*.

Case 4:19-cv-00093-WBG   Document 569   Filed 03/30/21   Page 7 of 14

In response, Plaintiffs explain the City utilizes a payroll program that calculates each component of an employee's pay. Doc. 552, at 12. According to Plaintiffs, each collective action member's work time is recorded by a battalion chief, and the timesheet is submitted to the City to process payroll in compliance with the City's pay policies. *Id.* Pay records, which are maintained by the City, were produced during discovery, and the authenticity of those pay records has not been questioned. *Id.* Moreover, the collective action members do not assert a claim associated with the accuracy with which their time was entered. *Id.* at 12-13. Rather, they challenge the City's application of a pay policy to the time they worked. *Id.* Consequently, Plaintiffs argue the City's defenses of offset, variances in premium payment, and *de minimis* underpayment will not require individual trials. *Id.* at 13-14. Instead, Plaintiffs contend the information necessary to determine these damages issues can be found in the City's pay records. *Id.*

The Court observes the City's identified defenses pertain to the issue of damages, and in particular, differences among collective action members' damages. However, "[d]ifferences in injury flowing from enforcement of the policy is not a proper defense or basis for decertification, as differences in injury do not disprove the claim that Defendants enforced an FLSA-violating policy to which all class members were subjected." *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 983 (W.D. Mo. 2019). Additionally, issues related to the amount of damages "do not preclude collective adjudication." *Shoots*, 325 F.R.D. at 279.

In addition, several courts have held the City's identified defenses do not necessitate decertification. *See, e.g., Senegal v. Fairfield Indus., Inc.*, No. H-16-2113, 2018 WL 6079354, at *12 (S.D. Tex. Nov. 21, 2018) (rejecting "Defendant's argument regarding the credit or offset of some of the Plaintiffs' claims" because those "issues can be addressed if liability is established on a class-wide basis" and "does not necessitate that the entire class be decertified."); *Grayer v.*

*Kennametal Inc.*, No. 1:16CV1382, 2018 WL 3640996, at *8 (N.D. Ohio July 30, 2018) (finding whether an employer "is entitled to offset any unpaid wages with overpayment . . . may be determined on a classwide basis."); *Burch v. Qwest Comm'cns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1121 (D. Minn. 2009) (citation omitted) (finding a *de minimis* defense pertaining to time worked was a "legal question, properly resolved on a class-wide basis."). Additionally, the City has not countered Plaintiffs' argument that the City's defenses, which are based on factors related to collective action members' alleged damages, cannot be easily determined from the City's records. Regardless, if Plaintiffs establish the City is liable, and there are considerable differences among collective action members' damages, this Court "may create damages subclasses." *See Kautsch*, 2008 WL 294271, at *4. Based on the foregoing, the Court finds the individualized defenses factor weighs in favor of collective action treatment.

### (3) *Fairness and Procedural Considerations*

When determining whether FLSA claims can be tried fairly as a collective action, the Court must consider section 216(b)'s purpose: "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan*, 551 F.3d at 1264-65 (citing *Hoffmann–La Roche,* 493 U.S. at 170). Furthermore, the Eighth Circuit has explained, "[t]he FLSA should be given a broad reading, in favor of coverage" and "has been construed liberally to apply to the furthest reaches consistent with congressional direction." *Kelley v. Alamo*, 964 F.2d 747, 749-50 (8th Cir. 1992) (citing *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211 (1959)). The FLSA's remedial nature alone is "insufficient to justify allowing a case to proceed as a collective action," but when there is "a close call as to whether the plaintiffs are similarly situated," it "should be resolved in favor of certification." *Shoots*, 325 F.R.D. at 279 (citation omitted).

9

The City contends Plaintiffs did not pool their resources in this matter, and therefore, the Court should not consider that factor. Doc. 536, at 5. The City also argues collective adjudication would violate its rights to due process because it would not have the opportunity to defend itself against collective action member's claim because their damages are so divergent. *Id*. Plaintiffs, on the other hand, maintain a collective action lowers costs to Plaintiffs, resolves common legal and factual questions, and the City will not be denied due process because Plaintiffs' claims pertain to a policy applied by the City to all firefighters. Doc. 552, at 15-18.

The Court notes the more than 400 collective action members have been and continue to be represented by the same law firm. Throughout more than two years of litigation, counsel has sought and continues to seek relief on behalf of the collective action members. Counsel has filed several motions, taken numerous depositions, engaged in written discovery, hired an expert witness, and attempted to resolve the matter in mediation. *See* Docs. 9, 12-13, 20-24, 28-29, 32, 39-40, 540-41, 545, 556-57, 561-62, 565, 567. If the Court were to decertify the collective action, the claims of hundreds of collective action members would be dismissed without prejudice, leaving those collective action members no choice but to prosecute their claims on an individual basis. Plaintiffs' counsel represents, and the City does not dispute, these individuals would not have the resources to pursue their own claims, particularly given that the "potential for recovery is disproportionately low compared to the costs of litigation." Doc. 552, at 15.

The City claims collective adjudication would violate its due process rights because the collective action members' claims and damages are "so divergent." Doc. 536, at 6. The City contends it will need to take each collective action member's deposition and will need to review time clock and other records. *Id*. The City's argument, however, ignores that Plaintiffs allege the City erroneously calculated overtime pay in violation of the FLSA. Doc. 1-1. As discussed *supra*,

the collective action members' FLSA claims are not based upon different facts or employment settings.

Further, the cases upon which the City relies do not support its argument that the collective action must be decertified. Doc. 536, at 6-8. In *O'Brien v. Ed Donnelly Enterprises, Inc.*, No. 2:04-CV-00085, 2006 WL 3483956, at *4 (S.D. Ohio Nov. 30, 2006), the district court decertified the collective action because the plaintiffs did not demonstrate "the existence of an unlawful policy or plan that victimized both the original and opt-in plaintiffs," and therefore, the plaintiffs were not similarly situated. In the matter before this Court, Plaintiffs have demonstrated the existence of policy that affected all collective action members. Accordingly, the City's reliance on *O'Brien* is erroneous.

In *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 579 (E.D. La. 2008), the district court found the collective action members had "different responsibilities from one another" and "different duties from day-to-day and within a single day." Because the employees were dissimilar, the Court concluded the employer was "inhibit[ed]…from proving its statutory exemption defense," and the Court could not "confidently adjudicate the plaintiffs' claims or the employer's defenses." *Id*. Likewise, in *Roussell v. Brinker Int'l, Inc.*, No. 4:05-cv-03733 (S.D. Tex. Sept. 30, 2008), the court decertified the collective action because "complicated and individualized circumstances" among the 3,500 opt-in members who worked in forty-five different states gave rise to "critical questions of fact" varying "from plaintiff to plaintiff and restaurant to restaurant" and did "not allow resolution of the case in a single collective proceeding." Doc. 172, at 3-5.

The remainder of the cases city by the City fare no better. *See Reyes v. Texas Ezpawn, L.P.*, No. CIV.A. V-03-128, 2007 WL 101808, at *4 (S.D. Tex. Jan. 8, 2007) (decertifying a

collective action because there was "no real commonality among the Plaintiffs in their actual day to day job duties" in that the factual an employment settings at 180 locations differed and "job duties varied from store to store"); *King v. W. Corp.*, No. 8:04CV318, 2006 WL 118577, at *15 (D. Neb. Jan. 13, 2006), *report and recommendation adopted,* No. 8:04CV318, 2006 WL 8458270 (D. Neb. Feb. 7, 2006) (finding whether 177 opt-in plaintiffs were exempt or non-exempt status "would need to be determined on a job-by-job, or an employee-by-employee basis, resulting in essentially individual trials"). In the pending matter, Plaintiffs have not asserted a claim associated with exempt or non-exempt status, and the City sets forth nothing indicating "critical question of fact" related to the application of the City's pay policy vary from plaintiff to plaintiff. Thus, the City's reliance on these cases is misplaced.

Here, the Court concludes collective adjudication reduces the burden on Plaintiffs through the pooling of resources and efficiently resolves common issues of law and fact arising from the City's application of a pay policy. Not only would it be impractical or difficult for each collective action member to pursue his or her FLSA claim individually, the legal questions and common factual issues lend themselves to resolution through common evidence. By permitting this matter to proceed as a collective action, the result will be one judgment. Whereas, decertification could result in hundreds of individual trials. *See Kautsch*, 2008 WL 294271, at *4; *see also Shoots*, 325 F.R.D. at 279-80. Accordingly, the issues will be efficiently resolved for the parties and the Court.

Based on its analysis of the foregoing factors, the Court finds the collective action members have demonstrated a reasonable basis for their claim of a class-wide violation.

## III. THE CITY'S MOTION TO REMOVE INDIVIDUALS FROM CONDITIONALLY CERTIFIED COLLECTIVE ACTION

The City asks the Court to remove those individuals from the conditionally certified collective action who "never received specialty pay, or have received specialty pay, but not

between January 10, 2016, and the present." Doc. 534, at 1. The City identified the following 91 individuals:

| | | | |
|---|---|---|---|
| Brian L. Alexander | David Dice | Lori Johnson | Anthony G. Pisciotta |
| Josh Alt | Joseph DiGirolamo | Tyrone Jones | John Pisciotta |
| Joseph Alvarez | Dustin Dines | Kalen E. Karbowski | Abigail Plihal |
| James Armster | Dustin Donovan | Weston Kilgore | Kramer Porter |
| Ryan Atty | Jacob Dujakovich | Richard Kimball | John Pusateri |
| Brett Braun | Steven Eller | Michael LaCapra | Leo Revoal |
| Nicolas Barr | Dwayne Franklin | Jamison Leavene | Kirk Ritchie Jr |
| Bill Birmingham[6] | Gregory S. Galvin | Timothy Ledford | Brandon S. Roberts |
| Terrell Blake | George Garrett | Quentin Leeks | Michael Ruhlman |
| Kenneth J. Blessie II | Richard W. Glossip | Michael Maggio | Amy Russell |
| Kurtis Blocher | Jason Goebel | Lisa Malloy | Charley Sanders |
| Daniel Brown | Steven Graves III | Phillip Marshall | Aaron Schmidt |
| Anthony Byas | Brad Hall | Ryan McBride | Ryan Slead |
| Jeffrey A. Byrd | Andrew Hanchette | Eric McCoy | Patricia Sterns |
| Samuel Carlson | James Hartley | Robbie Medellin | Daniel P. Sweeney |
| Joseph M. Castro | Terry Hertzog | Gerald Mezzacasa | Jack Thomas |
| Morris Clay | Dale E. Higgins | Joe Mingrone | Don Toston |
| David Clark | Timothy Highley | Jennifer L. Mobley | Thomas B. Tvedten[7] |
| Naheema Clark | Kelly Hobbs | Ryan Moore | Casey Upton |
| Timothy Corrado | Jason Hughes | Gregory Morgan | Anthony Wagner |
| Candis Crawford | Brandon Hullinger | Chris Nichols | Darryl Wells |
| Jerry Davis | Rick Humston | John Ortega | David R. Wells |
| Steven Davis | David Hutson | Kenneth Pegue | |

In support of its motion, the City provided the affidavit of Mary Madick, the Administrative Officer - Payroll for the Kansas City Fire Department. Doc. 534-1. Madick reviewed the pay history of all individuals who joined the collective action and found the above-listed individuals never received specialty pay or did not receive specialty pay since January 10, 2016. *Id.* at 1-2. Plaintiffs filed nothing in response to the City's motion, tacitly conceding the City is entitled the relief it seeks. Additionally, based on the evidence presented, the Court GRANTS the City's motion. The above-named individuals are removed from this collective action and are not entitled to any relief that may be recovered in this matter.

---

[6] Birmingham died on April 13, 2020. Doc. 535-2.
[7] Tvedten died on May 6, 2020. Doc. 535-3.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES the City's Motion to Decertify the Collective

Action and GRANTS the City's Motion to Remove Individuals from the Collective Action.

IT IS SO ORDERED.

DATE:  March 30, 2021                                    _/s/ W. Brian Gaddy_____
                                                                           W. BRIAN GADDY
                                                                           UNITED STATES MAGISTRATE JUDGE