IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **CRAIG ADAMS and JOSEPH KNOPP,** | ) | |
| **Individually and on Behalf of Others** | ) | |
| **Similarly Situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-CV-00093-W-WBG** |
| | ) | |
| **CITY OF KANSAS CITY, MISSOURI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER AND OPINION (1) GRANTING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT, (2) DENYING THE CITY'S MOTION FOR SUMMARY
JUDGMENT, AND (3) DENYING PLAINTIFFS' MOTION FOR LEAVE**

Pending are Plaintiffs' Motion for Partial Summary Judgment (Doc. 556), Defendant's

Motion for Summary Judgment (Doc. 558), and Plaintiffs' Motion for Leave to File Sur-Reply

(Doc. 567). For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Partial

Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **DENIES**

Plaintiffs' Motion for Leave to file Sur-Reply.

## I.    BACKGROUND

### A.    Procedural History

Defendant City of Kansas City, Missouri ("the City") employs Plaintiffs Craig Adams and

Joseph Knopp as firefighters. In January 2019, Plaintiffs, on behalf of themselves and others

similarly situated, filed suit in the Circuit Court of Jackson County alleging the City breached a

contract and violated the Fair Labor Standards Act ("FLSA") by miscalculating overtime pay.

Doc. 1-1 at 3-11.[1] In February 2019, the City removed the matter to this Court. Doc. 1.

---

[1] The Court's page references are to the pagination applied by ECF to the parties' filings. Doc. 544.

In January 2020, the Honorable John T. Maughmer granted Plaintiffs' motion to conditionally certify an FLSA collective action of current and former firefighters employed by the City who received certification or incentive pay at any time since January 10, 2016. Doc. 45. Pursuant to the Court's Order, those firefighters were notified of the collective action and instructed to submit consent forms if they wanted to join the collective action. *Id.* at 7. More than 450 consent forms were submitted by April 14, 2020. Docs. 49-529, 531.

In August 2020, the City moved to decertify the collective action and asked that certain individuals be removed from the collective action. Docs. 534, 536. In addition, both parties filed summary judgment motions. Docs. 538, 540. In mid-September 2020, the parties stipulated to the dismissal of Plaintiffs'[2] breach of contract claim, and due to a scheduled mediation, the parties moved to stay briefing on the pending motions. Doc. 544-45. Judge Maughmer granted the parties' request and stayed all briefing. Doc. 546.

Although the matter was not resolved during mediation, the parties agreed to stipulate to several facts. Doc. 550 at 1. Due to the dismissal of the breach of contract claim and the parties' forthcoming stipulation of facts, the parties jointly asked the Court to find the pending summary judgment motions moot and allow the parties to submit new summary judgments motions. *Id.* at 2. On September 23, 2020, Judge Maughmer granted the request, declared the summary judgment motions moot, and set deadlines for the parties to file their stipulation of facts and new summary judgment motions. Doc. 551. The City's motions to decertify the collective action and remove individuals from the collective action (Docs. 538, 540) remained pending, and the parties continued to brief those motions.

---

[2] Hereinafter, "Plaintiffs" refers to the named Plaintiffs and members of the conditionally certified collective action.

On September 28, 2020, this matter was transferred to the undersigned. Doc. 553. And on October 19, 2020, the parties consented to the undersigned's jurisdiction. Docs. 555, 555-1. Shortly thereafter, on October 23, 2020, the parties filed cross-motions for summary judgment. Docs. 556, 558. On December 8, 2020, Plaintiffs moved for leave to file a sur-reply to Defendant's summary judgment motion. Doc. 567. On March 30, 2021, the Court denied the City's Motion to Decertify the Collective Action and granted the City's Motion to Remove Individuals from the Collective Action. Doc. 569. The Court now turns its attention to the parties' cross motions for summary judgment, and Plaintiffs' motion for leave to file a sur-reply.

### B.    Facts Applicable to the Summary Judgment Motions[3]

The City and the International Association of Fire Fighters Local No. 42, to which Plaintiffs belong, are parties to a collective bargaining agreement ("CBA"). Doc. 554 at 1; Doc. 554-1.[4] The City pays its firefighters according to the monthly wage scales appended to the CBA. Doc. 554 at 2; Doc. 554-1 at 75-76, 112-18. Firefighters are "placed on the scales" based on "their specific rank and tenure that is commensurate with the years the member has in rank." Doc. 554 at 2; Doc. 554-1 at 75-76, 112-18.

In addition, firefighters may be entitled to wage augments for special duties, assignments, and/or certifications. Doc. 554 at 2; Doc. 554-1 at 76-78. Wage augments provide additional compensation as a percentage, ranging from three to ten percent, of a firefighter's salary or an additional amount of money, ranging from $25 to $75, per pay period. Doc. 554 at 2; Doc. 554-1 at 76-78. These wage augments and their pay codes are as follows:

---

[3] Before filing dispositive motions, the parties filed a Joint Stipulation of Facts. Doc. 554. Unless otherwise noted, this subsection incorporates the parties' stipulated facts, exhibits attached to the parties' stipulated facts, and facts submitted by the parties in their summary judgment briefing that were supported by the record and undisputed.

[4] The parties agree the Local 42 firefighters did not waive, reduce, or contract away any FLSA rights in the CBA. Doc. 554 at 1.

- Members with an associate degree "in a field reasonably related to the fire service… shall receive…$25.00 per pay period." Doc. 554-1 at 76. This "educational incentive" is pay code "ED1" and is identified as "FF ED1" on pay advices.[5] Doc. 554 at 2.

- Members with a bachelor's degree "in a field reasonably related to the [f]ire [s]ervice… shall receive…$50.00 per pay period." Doc. 554-1 at 76. This "educational incentive" is pay code "ED2" and appears as "FF ED2" on pay advices. Doc. 554 at 2.

- Members with a master's degree "in a field reasonably related to the fire service… shall receive $65.00 per pay period." Doc. 554-1 at 76. This "educational incentive" is pay code "ED3" and is designated as "FF ED3" on pay advices. Doc. 554 at 2.

- Members with a doctoral degree "in a field reasonably related to the fire service …shall receive $75.00 per pay period." Doc. 554-1 at 76. This "educational incentive" is pay code "ED4" and appears as "FF ED4" on pay advices. Doc. 554 at 2.

- Hazardous Materials ("HazMat") Team members "who achieve and maintain the operational level of training and certification shall receive additional pay of three percent (3%) above what his/her salary would otherwise be." Doc. 554-1 at 77. This "certification incentive" is pay code "HZ1" and is listed as "HAZ1 FIRE" on pay advices. Doc. 554 at 3.

- HazMat Team members "who achieve and maintain the technical level of training and certification shall receive additional pay of five percent (5%) above what his/her salary would otherwise be." Doc. 554-1 at 77. This "certification incentive" is pay code "HZ2" and is included as "HAZ2 FIRE" on pay advices. Doc. 554 at 3.[6]

- Aircraft Rescue and Firefighting ("ARFF") Division members "who achieve and maintain the required ARFF training and certification shall receive additional pay of five percent (5%) above what their salary would otherwise be." Doc. 554-1 at 77, 97. This "certification incentive" is pay code "AR1" and is identified as "FF AR1 5%" on pay advices. Doc. 554 at 3.

- "Members assigned to Pumpers 8, 9, [and] 25" and District 102 District Safety Officers ("DSOs") who "achieve and maintain the required ARFF training and certification shall receive additional pay of three percent (3%) above what their salary would otherwise be." Doc. 554 at 3; Doc. 554-1, at 77. This "certification incentive" is pay code "AR2" and is designated as "FF AF2 3%" on pay advices. Doc. 554 at 3.

- Members "assigned to Pumper 16 shall receive additional pay of five percent (5%) above what their salary would otherwise be, if they have participated in ARFF training." Doc. 554 at 3-4; Doc. 554-1 at 77. This "assignment bonus" is pay code "P16" and appears on pay advices as "FF P16 5%." Doc. 554 at 3-4.

---

[5] "Pay advices" are akin to paystubs. *See* Doc. 554-1 at 14; Doc. 559 at 13, 17, 23; Doc. 559-1 at 6-7; Doc. 559-16 at 1; Doc. 559-17 at 1; Doc. 559-18 at 1.

[6] The parties agree Plaintiff Adams was entitled to this five percent certification incentive. Doc. 561 at 19.

- Rescue Division members "shall receive additional pay of five percent (5%) above what their salary would otherwise be." Doc. 554 at 4; Doc. 554-1 at 77. This "assignment bonus" is pay code "RSC" and is identified as "RESCUE" on pay advices. Doc. 554 at 4.

- Credentialed members "permanently assigned to a cross trained dual role ALS [advanced life-saving][7] company…shall receive three percent (3%) bonus pay." Doc. 554 at 4; Doc. 554-1 at 78. This "assignment bonus" is pay code "SQA" and appears on pay advices as "Squad Ince." Doc. 554 at 4.[8]

- "Members who have successfully completed a language proficiency assessment of a foreign language or American Sign Language…shall receive $50.00 per pay period." Doc. 554 at 4; Doc. 554-1 at 78. This certification incentive is pay code "FOL," and it is designated as "Foreign La" on pay advices. Doc. 554 at 4.

- Members serving as field training officers or instructors in specified areas receive additional pay of ten percent (10%) above what their salary would otherwise be. Doc. 554 at 4; Doc. 554-1 at 77. This "assignment bonus" is pay code "TRG," and it is listed as "FF TRG 10%" on pay advices. Doc. 554 at 4.

The CBA pronounces the wage augments "shall not be regarded as wages." Doc. 554-1 at 76. Nonetheless, the parties stipulate the wage augments are considered "remuneration" and are included in the "regular rate" as defined by the FLSA. Doc. 554 at 4.

According to the CBA and the parties' stipulation, firefighters assigned to 24-hour shifts "shall average 49.5 hours per week."[9] Doc. 554 at 1; Doc. 554-1 at 40. And firefighters' "normal FLSA work period" is twenty-eight days. *Id.* Regarding overtime, both the CBA and the parties' stipulation proclaim firefighters "shall receive overtime pay at the rate of time-and-one-half for all hours actually worked in excess of 212 hours in any 28-day work period." Doc. 554 at 1-2; Doc. 554-1 at 40; Doc. 564 at 12.

---

[7] The CBA states ALS is the acronym for "Advanced Life Support" (Doc. 554-1 at 78), but the parties suggest ALS stands for "advanced life-saving" (Doc. 554 at 4). The difference in wording is minor and does not impact the Court's rulings. To avoid confusion, the Court uses the parties' phrasing.

[8] The parties agree Plaintiff Knopp was entitled to this three percent assignment bonus. Doc. 561 at 20.

[9] The Court's reference to "firefighters" pertains only to those firefighters who work 24-hour shifts.

The City pays its firefighters every two weeks. Doc. 554 at 5. Initially, the City pays a firefighter his or her "base hourly rate,"[10] as calculated by the City, for all hours worked during the preceding two-week pay period. *Id*. Then, at the end of every other pay period, the City performs an FLSA "lookback" to determine if a firefighter worked more than 212 hours during the preceding 28-day period. *Id*.; *see also* Doc. 554-2. After the City performs its FLSA lookback, it pays a "premium rate" for hours worked in excess of 212 hours during the preceding 28-day period. Doc. 554 at 5.

Most relevant to the pending motions is the City's treatment of wage augments. The City pays wage augments for the first 99 hours that a firefighter works in a two-week pay period. *Id*.; Doc. 564 at 10. But the City does not pay wage augments for any hours, including overtime, that a firefighter works over 99 hours in a two-week pay period. *Id.* The issue raised in the parties' summary judgment motions is the City's calculations of Plaintiffs' regular rate and overtime compensation. *See* Docs. 556-59.[11]

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (citations omitted). To support its assertion that no genuine

---

[10] In the joint stipulation of facts and throughout the briefing, the parties employ phrases such as base hourly rate, hourly rate, regular hourly rate, weekly salary, weekly wage, fixed salary, flat salary, premium rate, premium portion, and base pay. *See, e.g.*, Doc. 554 at 5; Doc. 557 at 6-8, 10, 12, 14; Doc. 559 at 7-8, 15-25, 27-28; Doc. 560 at 6-13, 15-19; Doc. 561 at 10-13, 15-18, 20-26, 31-33; Doc. 562 at 6, 8-11, 13-14; Doc. 564 at 10, 13-14, 16. At times, the meanings of the phrases are unclear. Here, the Court uses the parties' terminology. However, in its discussion of the pending motions, the Court explains the parties' calculations and the amounts paid, applies the FLSA's terminology when applicable, and explains phrases susceptible to alternative meanings.

[11] The City seeks summary judgment in its favor on all issues. Docs. 558-59. Plaintiffs seek summary judgment in their favor on the issue of liability. Docs. 556-57.

6

dispute of material fact exists, the movant must cite "to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56(c)(3)-(4), (e); L.R. 56.1(a), (d). In response, the nonmovant must set forth facts, supported by evidence, demonstrating a genuine issue for trial; showing the movant's cited materials "do not establish the absence…of a genuine dispute" or the movant "cannot produce admissible evidence to support the fact"; and/or objecting "that the material cited…cannot be presented in a form…admissible in evidence." Fed. R. Civ. P. 56(c)(1)-(2); *see also* Fed. R. Civ. P. 56(c)(3)-(4), (e); L.R. 56.1(b), (d).

When considering a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *See Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). The Court, however, is not permitted to make credibility determinations or weigh evidence. *Id*. Rather, the Court must consider the record as a whole. If the record "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *see also Lissick v. Andersen Corp.*, 996 F.3d 876, 882 (8th Cir. 2021) (citation omitted).

**B.    The FLSA, its Applicability to Firefighters, and the Partial Exemption**

The FLSA was enacted in 1938 "to protect all covered workers from substandard wages and oppressive working hours…." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Specific to working hours, the FLSA created a forty-hour workweek with employees receiving additional compensation for working overtime. 29 U.S.C. § 207(a)(1). To properly compensate an employee for time worked in excess of forty hours, the employee must be paid "at a rate not less than one and one-half times the regular rate at which he is employed." *Id*. As explained by the Supreme Court, the FLSA's overtime provision is meant "to compensate those

who labored in excess of the statutory maximum number of hours for the wear and tear of extra work." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948).

Because fire protection services do not necessarily fit the normal pattern of a forty-hour workweek, a partial overtime pay exemption was made available to public agencies employing fire protection services personnel. H. Educ. & Labor Comm., Fair Labor Standards Amendment of 1974, H. Rep. No. 93-913 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837; 29 U.S.C. § 207(k); *see also Christian v. City of Gladstone*, 108 F.3d 929, 931 (8th Cir. 1997). The partial exemption "accommodates the inherently unpredictable nature of firefighting…by permitting public employers to adopt work periods longer than one week." *O'Brien v. Town of Agawam*, 350 F.3d 279, 290 (1st Cir. 2003) (citations omitted). A public agency employing fire protection services personnel does not violate the FLSA if "in a work period of 28 consecutive days," a firefighter receives "compensation at a rate not less than one and one-half times the regular rate at which he is employed" for all time during which the firefighter is on duty in excess of 212[12] hours. 29 U.S.C. § 207(k)(1); *see also* 29 C.F.R. §§ 553.220(a) (defining "tour of duty"), 553.221(b) (explaining "compensable hours of work"), and 553.232 (setting forth overtime pay requirements).

For the partial exemption to apply, the employer must be a public agency, the employees must be engaged in fire protection services, and the employer must adopt a qualifying work period. 29 U.S.C. § 207(k); 29 C.F.R. § 553.224(a) (defining a qualifying work period as "any established and regularly recurring period of work which…cannot be less than 7 consecutive days nor more than 28 consecutive days."). Neither party disputes the City is a public agency or that Plaintiffs engage in fire protection services. Pursuant to the CBA and the parties' stipulation, the firefighters

---

[12] 29 U.S.C. § 207(k) indicates 216 hours is the standard; however, the federal regulations state "the 216-hour standard has been replaced…by 212 hours for fire protection employees." 29 C.F.R. §§ 553.201(a), 553.230(a).

"normal FLSA work period" is twenty-eight days, which is a qualifying work period.  Doc. 554 at 1; Doc. 554-1 at 40.  Based on the foregoing, the partial exemption in section 207(k) applies.

### C.    Regular Rate of Pay Under the FLSA

Before addressing whether the firefighters were properly compensated for overtime, the Court must determine the firefighters' regular rates of pay under the FLSA.  "The regular rate of pay calculation is critical because it provides the base point from which the firefighters' overtime compensation is calculated."  *Acton v. City of Columbia*, 436 F.3d 969, 976 (8th Cir. 2006); *see also Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("The keystone of Section 7(a) is the regular rate of compensation.  On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes."); 29 U.S.C. § 207(k)(1).

### (1) What is Included in the Regular Rate of Pay?

As stated by the Supreme Court and recently reiterated by the Eighth Circuit, the regular rate is "the hourly rate actually paid the employee for the normal, non-overtime [work period][13] for which he is employed."  *Youngerman-Reynolds*, 325 U.S. at 424; *Zimmerli v. City of Kansas City*, 996 F.3d 857, 863 (8th Cir. 2021) (quoting *Youngerman-Reynolds*, 325 U.S. at 324); *see also* 29 C.F.R. § 778.108.  The regular rate must include "all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *see also Youngerman-Reynolds*, 325 U.S. at 424.  The parties agree a firefighter's regular rate of pay includes his or her monthly salary.  Doc. 554 at 2; Doc. 554-1 at 75-76, 112-18.

Determining an employee's regular rate of pay does not necessarily conclude with an employee's salary.  The FLSA requires other compensation be included in the regular rate of pay if the parties agreed the other compensation "shall be received regularly" during the work period,

---

[13] When section 207(k) applies, "workweek" is substituted with "work period."  29 C.F.R. § 553.233.

"exclusive of overtime payments." *Youngerman-Reynolds*, 325 U.S. at 424. According to the Eighth Circuit, "[t]here is a statutory presumption that remuneration in any form is included in the regular rate calculation," and the employer has the burden "to establish that the remuneration in question falls under an exception." *Acton*, 436 F.3d at 976 (quotations and citation omitted).

Most relevant to this matter, the federal regulations declare the regular rate of pay must include non-discretionary bonuses paid to an employee, bonuses promised to the employee upon hiring, and bonuses that are the result of collective bargaining. 29 C.F.R. §§ 778.208, 778.211(c); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Sept. 30, 1999); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Aug. 26, 1986). In addition to the federal regulations, several courts have determined shift differential pay, longevity bonus or incentive, fitness pay, career incentive, duty availability pay, educational incentive, specialty pay, assignment differential pay, bilingual pay, and certification pay are remuneration and must be included in the regular rate of pay. *See, e.g.*, *Bay Ridge Operating*, 334 U.S. at 468-69; *Albers v. Board of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 704-05 (10th Cir. 2014); *Wheeler v. Hampton Twp.*, 399 F.3d 238, 247-48 (3d Cir. 2005); *O'Brien*, 350 F.3d at 294-97; *Featsent v. City of Youngstown*, 70 F.3d 900, 904-05 (6th Cir. 1995); *Thomas v. Howard Univ. Hosp.*, 39 F.3d 370, 372 (D.C. Cir. 1994); *McGrath v. City of Somerville*, 419 F. Supp. 3d 233, 252-53 (D. Mass. 2019); *Shepard v. City of Waterloo*, No. 14-CV-2057-LRR, 2015 WL 9165915, at *13 (N.D. Iowa Dec. 16, 2015); *Carabello v. City of Chicago*, 969 F. Supp. 2d 1008, 1015-17 (N.D. Ill. 2013); *Moss v. City of San Bernardino*, No. EDCV 07-1027-JTM, 2011 WL 13175467, at *8 (C.D. Cal. Mar. 22, 2011); *Murphy v. Town of Natick*, 516 F. Supp. 2d 153, 157 (D. Mass. 2007); *Theisen v. City of Maple Grove*, 41 F. Supp. 2d 932, 938-39 (D. Minn. 1999).

Contrary to the federal regulations and the common law, the CBA declares special duty, assignment, and certification wage augments "shall not be regarded as wages." Doc. 554-1 at 76.

But the CBA does <u>not</u> supplant the FLSA. As stated by the Supreme Court, "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (citation omitted); *see also Bay Ridge Operating*, 334 U.S. at 464 (holding the regular rate "cannot be left to a declaration by the parties as to what is to be treated as the regular rate"); *Youngerman-Reynolds*, 325 U.S. at 425 (finding the regular rate is "unaffected by any designation of a contrary 'regular rate' in the wage contracts."); 29 C.F.R. § 778.108.

Instead, this Court must "look beyond that which the parties have purported to do" in the CBA. *Zimmerli*, 996 F.3d at 863. The regular rate must "be drawn from what happens under the employment contract." 29 U.S.C. § 207(e); 29 C.F.R. § 778.108 (citation omitted). In this case, the wage augments are nondiscretionary and guaranteed under the CBA, and thus, are remuneration for employment under the FLSA. Perhaps because the law is unambiguous, the parties agree the firefighters' regular rate under the FLSA must include special duty, assignment, and certification wage augments. Doc. 554 at 4. The Court agrees with the parties – the wage augments must be included in the firefighters' regular rate of pay.

### (2) What is Excluded from the Regular Rate of Pay?

Only eight types of payment are excluded from the regular rate of pay. 29 U.S.C. § 207(e); 29 C.F.R. §§ 778.108, 778.200, 778.208-.215. The employer bears the burden of establishing any "remuneration in question falls under an exception." *Acton*, 436 F.3d at 976 (quotations and citation omitted). The City does not contend the wage augments fit an exception. Doc. 557 at 9. Instead, the City admits the regular rate under the FLSA includes the wage augments. Doc. 554 at 4. Accordingly, no remuneration for employment paid to or on behalf of an employee is excluded from the firefighters' regular rate of pay. 29 U.S.C. § 207(e); 29 C.F.R. § 778.200(c).

**D.     Calculating the Regular Rate of Pay**

With the parties' agreement that wage augments must be included, the Court now turns to calculating the regular rate of pay. While the FLSA "does not require employers to compensate their employees on an hourly rate basis," the regular rate of pay "must be computed on the basis of the hourly rate derived therefrom." 29 C.F.R. § 778.109. Thus, "it is necessary to compute the regular hourly rate…during each work week." *Id*.

If employees, such as Plaintiffs, are paid a monthly salary, the monthly salary "must be reduced to its workweek equivalent" before determining the regular rate of pay. *Id*. § 778.113(b); *Zimmerli*, 996 F.3d at 865 (stating 29 C.F.R. § 778.113 "sets the standard for determining the regular rate of an employee employed solely on a salaried basis."). Pursuant to the federal regulations, an employee's monthly salary is multiplied by 12 (number of months) and divided by 52 (number of weeks) to calculate the workweek equivalent. 29 C.F.R. § 778.113(b). Then, the employee's "total remuneration for employment…in any workweek" is divided "by the total number of hours actually worked by [the employee] in that workweek for which such compensation was paid" to determine the employee's regular rate of pay. *Id*. § 778.109.

According to the CBA and the parties' stipulation, firefighters "shall average 49.5 hours per week." Doc. 554 at 1; Doc. 554-1 at 40. The City calculates the firefighters' hourly rate by multiplying an individual's monthly salary by twelve (number of months) and dividing by 2,574 (52 weeks multiplied by 49.5 hours per week). Doc. 554 at 5. For example, in March 2019, the City calculated Plaintiff Adams's base hourly rate by first multiplying his monthly salary ($6,336.00)[14] by 12, arriving at a total of $76,032.00. Doc. 559 at 16-17. Next, the City divided

---

[14] In response to the City's summary judgment motion, Plaintiffs disputed Adams's monthly salary was limited to $6,336 and maintained the monthly salary must include Adams's wage augment. Doc. 561 at 19. In support, Plaintiffs relied on the CBA, which states, "Members of the Hazardous Materials Team who achieve and maintain the technician level of training and certification shall receive additional pay of five percent (5%) above what his/her salary would otherwise be." Doc. 561-2 at 77. In its reply, the City contended Plaintiffs' representation was argument and should

$76,032.00 by 2,574, resulting in a quotient of $29.538502.  *Id.*  The City deemed $29.54 as Adams's "base hourly rate"[15] and paid the base hourly rate for all hours worked through 212 hours during the pay period.  Doc.  554 at 5; *see also* Doc. 560 at 9.

In addition, the City paid Adams's five percent wage augment for the first 99 hours worked during the pay period.  Doc. 554 at 5; Doc. 559 at 17-18.  The City calculated Adams's wage augment by multiplying his base hourly rate by five percent, arriving at $1.476925 per hour.  Doc. 559 at 17; Doc. 560 at 10.  Thus, the City paid Adams $31.02 (base hourly rate plus wage augment) per hour for the first 99 hours of the pay period.  Doc. 560 at 9.[16]  The parties agree that, for the pay period at issue, Adams's regular rate of pay was $31.02.[17]  Doc. 560 at 9; Doc. 561 at 31; Doc. 562 at 9.

The City performed a similar calculation related to Plaintiff Knopp in June 2018.  Doc. 559 at 23-24.  At that time, Knopp's monthly salary was $5,387.00.  *Id.* at 23.  The City multiplied his monthly salary by twelve, and then divided the product by 2,574, arriving at a "base hourly rate"

---

be disregarded.  Doc. 564 at 10.  However, in response to the "argument," the City stated, "the specialty pay should not be regarded as wages, so it does not set a 'new base.'"  *Id.*  Contrary to the requirements of the Federal Rules of Civil Procedure and the Court's Local Rules, the City did not cite anything in support of its position.  *Id.*; *see also* Fed. R. Civ. P. 56(c)(1)(A); L.R. 56.1(b)(1).  Nevertheless, the City seems to rely on the CBA, which states special duty, assignment, and certification pay "shall not be regarded as wages."  Doc. 554-1 at 76.  But, as set forth *supra*, section II(C)(1), neither a declaration by the parties nor a CBA may designate what the "regular rate" is under the FLSA.  *See Barrentine*, 450 U.S. at 740; *Bay Ridge Operating*, 334 U.S. at 464; *Youngerman-Reynolds*, 325 U.S. at 425; 29 C.F.R. § 778.108.  The wage augments, as detailed by this Court, must be included in the "regular rate."

[15] The "base hourly rate" did not include wage augments, and thus, it is not the regular rate of pay under the FLSA.

[16] Regarding this pay period, Adams also worked "out of class," or at a higher job classification than the one in which he is employed, during one of his scheduled shifts.  Doc. 559 at 18.  According to the City, Adams was entitled to the difference between his base pay and the higher hourly pay of the position in which he worked.  Doc. 559 at 18.  The difference was $1.63, and therefore, Adams was paid an additional $1.63 for the twenty-four hours he worked "out of class."  *Id.*

[17] Plaintiffs argue the City should have added Adams's five percent wage augment to his monthly salary (for a total of $6,652.80) *before* conducting further calculations to arrive at the regular rate.  Doc. 561 at 31.  Nonetheless, both Plaintiffs and Defendant arrive at the same regular rate: $31.02.  Doc. 559 at 17-18; Doc. 561 at 31.  The Court also reached the same regular rate but in a different fashion.  Pursuant to 29 C.F.R. § 778.113(b), the Court first multiplied Adams's monthly salary ($6,336.00) by twelve.  Then, the Court divided the resulting product ($76,032.00) by fifty-two.  The quotient, $1,462.15, represents the base weekly salary.  To include "total remuneration for employment" for the workweek, the Court then added the five percent wage augment to the weekly salary, for a total of $1,535.26.  *Id.* § 778.109.  To arrive at Adams's regular rate, the Court divided $1,535.26 by 49.5, which, according to the CBA, is the average number of hours a firefighter works per week.  The Court also arrived at a regular rate of $31.02.

of $25.114260. *Id.* The City paid Knopp the base hourly salary for all hours worked through 212 hours during the pay period. *Id*. at 24-25; Doc. 554 at 5.

In addition, the City paid Knopp's three percent wage augment for the first 99 hours he worked during the pay period. Doc. 554 at 5; Doc. 559 at 23. The City determined Knopp's wage augment was $0.753428. Doc. 559 at 23. So, for the first 99 hours of the pay period, the City paid Knopp $25.87 (base hourly rate plus wage augment) per hour. *Id.* Plaintiffs do not dispute the City's calculation of Knopp's regular rate of pay during the relevant pay period was $25.87. *See* Doc. 561.

Plaintiffs admit the wage augments are included in the remuneration for the FLSA regular rate calculations when the City pays them for the first 99 hours worked in each pay period. Doc. 561 at 5-8, 11. But Plaintiffs allege the City fails to use the regular rate and include wage augments when calculating their compensation for overtime hours worked. *Id*.

E.    **Calculating Overtime Pay**

Pursuant to the FLSA, the City will not be deemed to have violated 29 U.S.C. § 207(a) if "in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed…212[18] hours…compensation at a rate not less than one and one-half times the regular rate at which is employed." 29 U.S.C. § 207(k)(1). For every two-week pay period, the City pays firefighters their "base hourly rate," which is the hourly rate calculated by the City and does not include wage augments, for all hours worked during the pay period. Doc. 554 at 5. As discussed above, the City pays the wage augments for the first 99 hours worked during the pay period. *See supra*, section III(D).

---

[18] As previously noted, 29 U.S.C. § 207(k) indicates 216 hours is the standard; however, the federal regulations state "the 216-hour standard has been replaced…by 212 hours for fire protection employees." 29 C.F.R. §§ 553.201(a), 553.230(a).

## (1) Payment of the Regular Rate for Overtime Worked

Because overtime hours must be paid at one and one-half times the regular rate, the Court first must determine whether firefighters were paid the "one times" the regular rate for overtime hours worked. Although 29 U.S.C. § 207(k) requires the City to pay "no[ ] less than one and one-half times the regular rate" for hours worked in excess of 212 hours during a 28-day period, the City does <u>not</u> pay the FLSA regular rate of pay for overtime hours worked. This is because the City does not pay wage augments for any time worked over 99 hours, including overtime hours worked, during a pay period. Doc. 554 at 5.

The City argues the firefighters are paid a salary, and the salary is intended to compensate the firefighters for working 49.5 hours per week. Doc. 560 at 16. According to the City, if a firefighter "chooses to work beyond those 49.5 hours in a week," the firefighter is paid the base hourly rate. *Id*. The firefighter is not paid the wage augment because the wage augment "pay is only to be awarded in addition to the *salary*, not for hours worked beyond what the salary covers." *Id*. at 16-17. The City, however, cites no authority for this proposition. *See id*.

Instead, the City directs the Court's attention to the CBA, which indicates the wage augments are not to be regarded as "wages." *Id*. at 17; Doc. 544-1 at 76. This argument is without merit and ignores the precedent this Court must follow. *See Barrentine*, 450 U.S. at 740 (holding "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."). The City's failure to pay the regular rate (i.e., the "one…times the regular rate") for hours worked in excess of 212 hours during a 28-day period violates the FLSA. 29 C.F.R. § 778.107 ("The general overtime pay standard in section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed."); 29

C.F.R. § 778.108 (stating the "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee").

Because, at a minimum, the City failed to pay the regular rate (i.e., the "one…times the regular rate") for hours worked in excess of 212 hours during a 28-day period, and thus, violated the FLSA, the Court **DENIES** the City's motion for summary judgment on the issue of whether it violated the FLSA and **GRANTS** Plaintiffs' motion for partial summary judgment.

### (2) Payment of One-Half Times the Regular Rate for Overtime Worked

The Court now turns to the "one-half times the regular rate" for overtime compensation. The City maintains it does not violate the FLSA with regard to the "premium rate" paid for overtime hour worked. At the end of every other pay period, the City performs an FLSA "lookback" to determine if a firefighter worked more than 212 hours during the preceding 28-day period. Doc. 554 at 5; *see also* Doc. 554-2. After the City performs its FLSA lookback, it pays a "premium rate" for hours worked in excess of 212 hours during the preceding 28-day period. Doc. 554 at 5. The "premium rate" is calculated by dividing "all remuneration for the week" by all hours worked in the week. Doc. 559 at 22. The City contends it includes the wage augments in calculating the "premium rate" paid for overtime hours. *Id*. at 19-20.

By way of example, the City analyzed Plaintiff Adams's pay for the 28-day work period from February 17, 2019, through March 16, 2019. *Id.* at 20-22; Doc. 560 at 9-10. During this 28-day work period, Adams worked 118.7 hours in excess of 212 hours. Doc. 559 at 21; Doc. 560 at 11. Because Adams was already paid his "base hourly rate" of $29.538502 for those 118.7 hours, the previously paid amount of $3,506.22 ($29.538502 x 188.7) was deducted from his pay. Doc. 559 at 21-22; Doc. 560 at 10-11.

To determine Adams's "premium rate" for overtime hours worked, the City divided "all remuneration for the week," which it determined was $2,974.44, "by all hours worked in the

week," which it found was 96.9 hours. Doc. 559 at 22; Doc. 560 at 10. It is unclear as to how the City arrived at or decided to use 96.9 hours. The calculations set forth in the City's briefing suggests the City was looking at one particular week to determine the "premium rate." Doc. 559 at 22; Doc. 560 at 10. If the Court's assumption is correct, the City does not explain why it chose that week and why it was permitted to choose that week, particularly when it is conducting a 28-day lookback to determine overtime hours and pay. The City also does not indicate if it recalculates the "premium rate" for overtime hours worked by an employee each week.

Nevertheless, the City determined Adams's premium rate was $30.70 per hour ($2,974.44 divided by 96.9). Doc. 559 at 22; Doc. 560 at 10-11. Because Adams was already paid the base hourly rate for his overtime hours, the City multiplied his 118.7 overtime hours by 0.5 (for the one-half premium) and then multiplied by $30.70 for a total of $1,821.80. Doc. 559 at 22-23; Doc. 560 at 10-11. According to the City, this amount represents Adams's premium pay for overtime hour worked. Doc. 559 at 22-23; Doc. 560 at 10-11. Given the lack of clarity and information in the City's briefing, the Court is unable to determine if the City's calculations with regard to the "one-half times" the regular rate are correct. Nevertheless, the Court has already determined the City violated the FLSA by miscalculating the first portion (i.e., the regular rate) of the overtime compensation to be paid to the firefighters.

### (3) The Fluctuating Workweek Method of Calculating Overtime

The City contends its overtime pay calculations are correct because it uses the fluctuating workweek method. The United States Department of Labor provides different methods, including the fluctuating workweek method, to calculate overtime compensation while still complying with the FLSA. 29 C.F.R. § 778.114. Before delving into the specifics of the method, the Court must first address the parties' disagreement as to whether Plaintiffs may raise arguments about the City's method of calculating overtime pay.

## (a) Plaintiffs' Arguments About the City's Calculation Method

In its summary judgment motion, the City explained it employed a fluctuating workweek when calculating overtime, and thus, "all time (including overtime hours) is paid at the base hourly rate and then, during the lookback, overtime hours are paid at a premium rate." Doc. 559 at 14-15 (citing 29 C.F.R. § 778.114(a)). In response, Plaintiffs argued the City improperly uses the fluctuating workweek to calculate their overtime and examined why the fluctuating workweek could not be utilized. Doc. 561 at 27-37. In its reply, the City maintained Plaintiffs could not raise arguments about the fluctuating workweek because they did not plead the City impermissibly employed the fluctuating workweek, and thus, cannot inject a new claim in response to a summary judgment motion. Doc. 564 at 18-22. While it cited several cases for the proposition that a party may not raise new claims during summary judgment briefing, the City did not identify a single case supporting its proposition that Plaintiffs' purported failure to plead the City impermissibly employed the fluctuating workweek prohibited them from raising any argument related to the City's use of the fluctuating workweek. *See id.*

Upon receipt of the City's reply, Plaintiffs moved for leave to file a sur-reply to address, among other things, the City's argument that Plaintiffs failed to plead the fluctuating workweek method was impermissible, and therefore, could not raise a dispute as to the City's use of the method. Doc. 567. Plaintiffs also emphasized the City, in its reply, identified new legal arguments, which were not raised in its summary judgment motion. *Id*. Contrary to the Court's Local Rules, Plaintiffs failed to attach their proposed sur-reply to their motion for leave. *See* L.R. 15.1(a)(2). For this reason, the Court **DENIES** Plaintiffs' motion for leave to file a sur-reply. Regardless, the sur-reply is not necessary for the Court to address the issue at hand.

In their Petition, Plaintiffs alleged the City failed to pay overtime wages "of at least one and one-half times" their pay rates, and the City improperly calculated their overtime rate. Doc.

1-1 at 3-4, 6-9. While Plaintiffs did not identify an overtime calculation method by name, they claim, no fewer than six times, that the City improperly calculated and failed to pay their overtime compensation at one and one-half times the regular rate. *Id.* at 3, 5-9. Similar to the City, the Court cannot locate authority to support the City's argument that Plaintiffs cannot raise an argument as to City's method of calculating overtime compensation, particularly in light of the allegations in their Petition that the City improperly determined and did not pay the proper overtime compensation rate.

In its reply, the City also argued it "is severely prejudiced in its defense by the conditional class injecting the 'illegality' of the use of the fluctuating work week at this later date." Doc. 564 at 21. But this argument ignores Plaintiffs' allegation that the City improperly calculated their overtime pay. It also overlooks that there is more than one method for calculating overtime compensation. *See* 29 C.F.R. §§ 788.110-.122. And, as discussed below, the City has the burden of establishing it properly employed the fluctuating workweek method. For these reasons, the Court rejects the City's contention that Plaintiffs cannot raise arguments as to the legality of the fluctuating workweek method in this matter.

### (b) Requirements for Using the Fluctuating Workweek Method

The City does not ask the Court to enter summary judgment in its favor with regard to its use of the fluctuating workweek method. *See* Docs. 558-59. Nor do Plaintiffs move for summary judgment the issue. *See* Doc. 556-57. Nonetheless, because much time was spent on the issue in the parties' briefing and the issue inevitably will resurface in this matter, the Court will briefly address the issue. To use the fluctuating workweek method to compute overtime compensation, the employer must establish the following:

(1)     The employee works hours that fluctuate from week to week;

(2)     The employee receives a fixed salary that does not vary with the number of
          hours worked in the workweek, whether few or many;

(3)     The amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours the employee works is greatest;

(4)     The employee and the employer have a clear and mutual understanding that the fixed salary is compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular rate under section 7(e)(l) through (8) of the Act) for the total hours worked each workweek regardless of the number of hours, although the clear and mutual understanding does not need to extend to the specific method used to calculate overtime pay; and

(5)     The employee receives overtime compensation, in addition to such fixed salary and any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind, for all overtime hours worked at a rate of not less than one-half the employee's regular rate of pay for that workweek. Since the salary is fixed, the regular rate of the employee will vary from week to week and is determined by dividing the amount of the salary and any non-excludable additional pay received each workweek by the number of hours worked in the workweek. Payment for overtime hours at not less than one-half such rate satisfies the overtime pay requirement because such hours have already been compensated at the straight time rate by payment of the fixed salary and non-excludable additional pay. Payment of any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind is compatible with the fluctuating workweek method of overtime payment, and such payments must be included in the calculation of the regular rate unless excludable under section 7(e)(1) through (8) of the Act.

29 C.F.R. § 778.114(a).

Plaintiffs assert the fifth "condition" "is not at issue in this case" (Doc. 561 at 29 n.6), but it is the fifth requirement that gives the Court pause. This requirement states the regular rate "is determined by dividing the amount of the salary and any non-excludable additional pay received each workweek by the number of hours worked in the workweek." *Id*. § 778.114(a)(5). It also emphasizes "[p]ayment of any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind…must be included in the calculation of the regular rate." *Id.* Contrary to this requirement, the firefighters are not paid the regular rate of pay for overtime hours worked because their wage augments are never included in the regular rate of pay for overtime hours

worked. Doc. 554 at 5 ("The City does not pay the augment for hours worked over 99 hours in a pay period."). In addition, as the City indicated, section 778.114 was amended on August 7, 2020; thus, it is unclear of the impact, if any, the amendment has on this matter. Nevertheless, based on the record before it at this time, the Court is unable to determine whether the City met the requirements to use the fluctuating workweek method to calculate overtime compensation.

Given its rulings in this Order and the procedural posture of this, the Court finds it unnecessary to examine the other requirements for using a fluctuating workweek and/or whether the City was permitted to use the method.

**F.      Willfulness**

The City contends it is entitled to summary judgment on the issue of whether its actions were willful. Doc. 559 at 29-30. Under the FLSA, the statute of limitations is "two years after the cause of action accrued…except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A "willful" violation of the FLSA occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)); *see also Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2006). To be considered willful, the employer's conduct must be more than negligence. *McLaughlin*, 486 U.S. at 133. Plaintiffs oppose the City's request for summary judgment on the issue. Doc. 561 at 44-46. When considering the record before it and construing the facts and reasonable inferences in the light most favorable to the nonmovant, the Court finds genuine disputes as to material facts exist with regard to the nature of the City's conduct. Accordingly, the Court **DENIES** the City's request to enter summary judgment in its favor on the issue of whether its actions were willful.

### G. Liquidated Damages

The City also moves for summary judgment in its favor on the issue of liquidated damages. Doc. 559 at 29-30. If an employer violates 29 U.S.C. § 207, the employer is liable to the affected employees in the amount of unpaid overtime compensation, and it may also be liable for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). If the employer "shows to the satisfaction of the court" that its actions were "in good faith" and it "had reasonable grounds for believing" its actions were not violating the FLSA, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." *Id*. § 260. According to the Eighth Circuit, "[t]he employer bears the burden of proving both good faith and reasonableness." *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). This burden "is a difficult one, with double damages being the norm and single damages the exception." *Id*. at 941-42 (quoting *Herman*, 172 F.3d at 142).

"Good faith" is a subjective standard. *Id*. at 142. The employer "must establish 'an honest intention to ascertain and follow the dictates of the FLSA.'" *Id*. (quoting *Hultgren v. County of Lancaster*, 913 F.2d 948, 509 (8th Cir. 1990)). To do so, the employer must demonstrate it "took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id*. (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991)). The Eighth Circuit has found the employer's lack of knowledge, a lack of employee complaints about overtime, and the employer's delegation of the payroll function to a subordinate do not establish good faith. *Id*. at 942-43 (citations omitted).

The Court has carefully considered and reviewed the record. Based on the record before it and construing the facts and reasonable inferences in the light most favorable to the nonmovant, the Court finds genuine disputes as to material facts exist as to whether the City acted in good faith

and acted reasonably. Accordingly, the Court **DENIES** the City's request to enter summary judgment in its favor on the issue of liquidated damages.

### III.  CONCLUSION

Based on the foregoing discussion and analysis, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment (Doc. 556), **DENIES** the City's Motion for Summary Judgment (Doc. 558), and **DENIES** Plaintiffs' Motion for Leave to File Sur-Reply (Doc. 567). Pursuant to the parties' stipulation of dismissal (Doc. 544) and Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure, Plaintiffs' breach of contract claim is dismissed without prejudice.

**IT IS SO ORDERED.**

DATE: September 29, 2021          */s/ W. Brian Gaddy*
                                 W. BRIAN GADDY
                                 UNITED STATES MAGISTRATE JUDGE