IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CRAIG ADAMS and JOSEPH KNOPP, Individually and on Behalf of Others Similarly Situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 19-CV-00093-W-WBG ) |
| CITY OF KANSAS CITY, MISSOURI, | ) ) |
| Defendant. | ) |

## ORDER APPROVING SETTLEMENT

Pending is Plaintiffs' Unopposed Amended Motion to Approve Settlement. Doc. 622. For the reasons stated in this Order, the Court **GRANTS** Plaintiffs' amended motion and **APPROVES** the parties' settlement of Plaintiffs' FLSA claims.[1]

### I.   BACKGROUND[2]

In January 2019, Plaintiffs Craig Adams and Joseph Knopp, on behalf of themselves and others similarly situated, filed suit in the Circuit Court of Jackson County, against Defendant City of Kansas City, Missouri. Doc. 1-1 at 3-11. Plaintiffs, who are employed by the City as firefighters, allege the City violated the Fair Labor Standards Act ("FLSA") by miscalculating overtime pay. *Id*. In February 2019, the City removed the matter to this Court. Doc. 1.

In January 2020, the Honorable John T. Maughmer conditionally certified an FLSA collective action of current and former firefighters employed by the City who received certification or specialty pay since January 10, 2016. Doc. 45. Firefighters were notified of the collective

---

[1] Also pending is Plaintiffs' initial Unopposed Motion to Approve Settlement. Doc. 621. Because Plaintiffs filed an amended motion, their initial motion is **DENIED AS MOOT**.

[2] This section summarizes the matter's procedural history. The Court's Order on the parties' summary judgment motions details the matter's factual background, the claims and defenses, and the parties' arguments. *See* Doc. 570.

action and instructed to submit consent forms if they wanted to join the collective action. *Id*. at 7. At the close of the opt-in period, 474 firefighters joined the collective action. Docs. 49-529, 531.[3]

In August 2020, the City moved to decertify the collective action and asked that certain individuals be removed from the collective action because they did not receive certification or specialty pay since January 1, 2016. Docs. 534, 536. In addition, both parties filed summary judgment motions. Docs. 538, 540. But, in September 2020, the parties moved to stay briefing of all motions due to a scheduled mediation. Doc. 545. The Court granted the parties' request. Doc. 546. The matter was not resolved during that mediation, but the parties agreed to stipulate to several facts. Doc. 550 at 1. Consequently, the parties asked the Court to deny the pending summary judgment motions and permit the filing of new summary judgment motions. *Id*. at 2. The parties' request was granted, and in late October 2020, the parties filed new summary judgment motions. Docs. 551, 556, 558.

In March 2021, the Court denied the City's motion to decertify the collective action but granted the City's request to remove certain individuals from the collective action. Doc. 569.[4] With the removal of those 90 individuals, the collective action now consists of 384 individuals. In September 2021, the Court granted Plaintiffs' partial motion for summary judgment, finding the City violated the FLSA. Doc. 570 at 14-16. Because Plaintiffs' motion did not seek summary

---

[3] The Court notes the Settlement Agreement indicates 473 individuals joined the collective action. Doc. 623 at 1. However, as pointed out in Plaintiffs' amended motion to approve the settlement, 474 individuals joined the collective action. Doc. 622 at 2 n.2.

[4] The City's motion to remove certain individuals from the collective action identified 91 individuals it believed should be removed. Doc. 534 at 1-2. All but one of those individuals – Amy Russell – was included on Plaintiffs' list of putative collective action members. *Compare* Doc. 531 *with* Doc. 569 at 1-2. Thus, 90, not 91, individuals were removed from the collective action, leaving 384 members. The Court notes the Settlement Agreement indicates there are 383 collective action members; however, Exhibit A to the Settlement Agreement identifies 384 collective action members. Doc. 623 at 1; Doc. 623-1. During the March 29, 2022 settlement approval hearing, Plaintiffs' counsel and the City's counsel confirmed there are 384 collective action members, and the Settlement Agreement's reference to 383 collective action members was a scrivener's error. In addition, counsel for both parties agreed Exhibit A to the Settlement Agreement accurately lists all 384 collective action members.

judgment with respect to damages, that issue was not addressed by the Court and remains unresolved. The Court denied the City's summary judgment motion on the issues of liability, liquidated damages, and willfulness. Doc. 570 at 14-23.

In October 2021, the Court, after holding a status conference with the parties, scheduled a jury trial for March 7, 2022. Docs. 572-73. In addition, the Court referred the matter for mediation with the Director of the Court's Mediation and Assessment Program. Docs. 572, 574. In December 2021, the City moved to certify the Court's summary judgment order (Doc. 570) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and asked the Court to stay this matter pending resolution of the appeal. Docs. 581, 583. In addition, the City moved to exclude evidence of Plaintiffs' damages at the trial, and Plaintiffs moved to compel discovery. Docs. 584, 586.

On January 14, 2022, the Court denied the City's motion for certificate of appealability and the City's related motion to stay. Doc. 594. On January 24, 2022, the Court denied the City's motion to exclude evidence of Plaintiffs' damages at trial and denied Plaintiffs' motion to compel discovery. Doc. 595. On February 7, 2022, a pretrial conference was scheduled to take place; instead, a status conference was held. Docs. 572-73, 610. Based on the information provided during the hearing, the Court reopened discovery for the limited purpose of damage calculations and continued the jury trial to April 18, 2022. Docs. 610-11.

During February 2022, the parties engaged in nearly twenty hours of mediation and reached a settlement in this matter. Doc. 618; Doc. 622 at 2; Doc. 623 at 2.[5] On March 21, 2022, Plaintiffs filed their Unopposed Motion to Approve Settlement. Doc. 618. On March 28, 2022, the parties filed the Settlement Agreement, Release, and Waiver ("Settlement Agreement") and exhibits

---

[5] This was the third attempt to mediate this matter. During the infancy of this matter, the parties mediated with the Director of the Court's Mediation and Assessment Program ("MAP Director"). Doc. 2. Then, in September 2020, the parties engaged in mediation discussions with the MAP Director. Doc. 545 at 2; Doc. 548 at 2. The Court appreciates the MAP Director's extraordinary efforts in mediating this matter.

thereto. Docs. 623, 623-1, 623-2, 623-3. On March 29, 2022, the Court held a hearing on Plaintiffs' motion.

## II. DISCUSSION

### A. Final Certification of Collective Action

Courts, including this one, have determined a final certification finding is required when the parties propose to settle an FLSA collective action. *See Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, No. 3:16-CV-00026, 2017 WL 821656, at *2 (S.D. Iowa Jan. 10, 2017); *Stewart v. USA Tank Sales & Erection Co.*, No. 12-05135-CV-SW-DGK, 2014 WL 836212, at *2 (W.D. Mo. Mar. 4, 2014); *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan. 19, 2012); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010) (collecting cases). In March 2021, the Court denied the City's motion to decertify the conditionally certified collective action, finding the collective action members are similarly situated and demonstrated a reasonable basis for their class-wide violation claim. Doc. 569 at 3-12. Because Plaintiffs did not ask the Court to finally certify the collective action at that time (*see* Doc. 552), the Court did not do so.

During the settlement approval hearing, the Court asked Plaintiffs' counsel if he sought final certification of the collective action. Plaintiffs' counsel answered in the affirmative. Additionally, the City's counsel did not object to the Court finally certifying the collective action. In addition to Plaintiffs' counsel's request and without objection from the City, the evidence presented in the parties' briefing of the City's motion to decertify and the Court's analysis thereof demonstrate the collective action members are "similarly situated" within the meaning of 29 U.S.C. § 216(b). *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014). Accordingly, the Court finally certifies the collective action of firefighters employed by the City

who received certification or specialty pay between January 10, 2016, and April 30, 2021. The Court also designates Raymond Salva, Jr. and his law firm Boyd Kenter Thomas & Parrish LLC as counsel for the collective action.

**B.     Analysis of the Settlement**

Whether court approval is required for the settlement of all FLSA claims remains undecided in the Eighth Circuit. *See Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 854 n.1 (8th Cir. 2021) (citation omitted) (observing a circuit split as to whether judicial approval is required for all FLSA settlements and electing to "leave the question of whether judicial approval is required for all FLSA settlements for another day").[6] Because the parties request judicial approval of the settlement, the Court proceeds under the assumption that judicial approval is required. *See*, *e.g.*, *Del Toro v. Centene Mgmt. Co.*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *1 (E.D. Mo. May 5, 2021); *Sims v. Goodwill Indus. of Ark., Inc.*, No. 4:19-CV-00289-KGB, 2019 WL 5957177, at *2 (E.D. Ark. Nov. 12, 2019). When judicial approval of an FLSA settlement is required, courts must find the matter involves a bona fide wage and hour dispute, and the proposed settlement is fair and reasonable. *See Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982); *Krott v. New Directions Behav. Health, L.L.C.*, 4:19-CV-00915-DGK, 2022 WL 130978, at *2 (W.D. Mo. Jan. 13, 2022) (citation omitted).

**(1)     Bona Fide Wage Dispute**

A bona fide wage dispute exists when an employee and an employer disagree "with respect to coverage or amount due under the [FLSA]." *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703 (1945). Throughout the pendency of this matter, the parties have disputed, among other things,

---

[6] The Eighth Circuit previously noted "companies can settle [FLSA] claims in only two ways": (1) the settlement is supervised by the Secretary of Labor, or (2) "the district court enters a stipulated judgment" on a settlement amount to which the parties have agreed. *Beauford v. ActionLink, LLC*, 781 F.3d 396, 405-06 (8th Cir. 2015).

whether the collective action members were properly paid overtime compensation. *See* Docs. 1-1, 3, 23-24, 27, 29, 32-33, 36-37, 39-40, 43-44, 534, 536, 538-41, 552, 556-62, 564, 581-82, 585, 587. And, as stated in Plaintiffs' amended motion to approve the settlement and the Settlement Agreement, the parties continue to dispute whether the City violated the FLSA. Doc. 622 at 5-6; Doc. 623 at 1-2. Therefore, the Court finds this matter involves a bona fide wage and hour dispute.

**(2) Fair and Reasonable**

When determining whether an FLSA settlement is fair and reasonable, courts consider several factors, including but not limited to (1) the stage of litigation during which the settlement was reached; (2) the complexity, expense, and likely duration of the remaining litigation; (3) whether the settlement is the product of arm's length negotiations; and (4) whether the settlement's value outweighs the potential recovery if litigation continues. *See Molloy v. Hoambrecker Enters., LLC*, No. 19-CV-06030-SJ-DGK, 2020 WL 11145247, at *3 (W.D. Mo. Sept. 8, 2020); *King v. Raineri Constr., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015); *Sanderson v. Unilever Supply Chain, Inc.*, No. 10-CV-0775-W-FJG, 2011 WL 5822413, at *2 (W.D. Mo. Nov. 16, 2011). When considering the totality of the circumstances, the Court finds the settlement in this matter is fair and reasonable.

According to the parties, the discovery consisted of, *inter alia*, thousands of documents, spreadsheets, pay stubs, and compensation data. Doc. 622 at 2; Doc. 623 at 2. The parties hired experts and engaged in extensive motion practice. Docs. 12, 32-33, 44, 610; Doc. 622 at 2; s*ee supra*, section I. It was not until the parties were facing a fast-approaching trial date that the matter was resolved. To arrive at the settlement, the parties and their counsel engaged in arm's length negotiations, and no representations or promises were made to induce a party to enter into the Settlement Agreement. Doc. 622 at 5; Doc. 623 at 5. Had the matter been tried, the parties would

6
Case 4:19-cv-00093-WBG   Document 625   Filed 03/29/22   Page 6 of 11

have assumed real and inherent uncertainty, risk, expense, and time. Doc. 622 at 2-3, 5-6. The collective action members and their counsel inform the Court that they believe the settlement is fair, reasonable, adequate, and in the best interests of the collective action. Doc. 622 at 4-6; *see also* Doc. 623 at 2.

Pursuant to the Settlement Agreement executed by the parties on March 23, 2022, the City will pay a total of $1,760,192.83 ("Settlement Payment") to 347[7] collective action members. Doc. 622 at 1, 7; Doc. 623 at 3-4. The parties have agreed each collective action member will receive a "pro-rata partial payment for their wages," which is his or her "share of the settlement proceeds based on and in proportion to the compensable time worked" between January 10, 2016, and April 30, 2021. Doc. 622 at 3; Doc. 623 at 4. Payment amounts range from $51.82 to $44,934.12. Doc. 622-1; Doc. 623-1.[8] In exchange for the Settlement Payment, the collective action members agree to release all wage and hour claims they asserted (or could have asserted) against the City in this matter. Doc. 623 at 4.

Based on the foregoing, the Court concludes the settlement is in the best interests of the collective action members and should be approved, particularly considering the benefits to the collective action members, the substantial discovery and extensive motion practice in this matter, and the risk, expense, and potentially protracted duration of further litigation. The Court also determines the consideration provided under the Settlement Agreement constitutes reasonable and

---

[7] Plaintiffs were unable to ascertain underpayment of overtime for thirty-seven collective action members because those individuals did not work overtime or the difference between the calculated damages and actual pay was zero or less than zero. Doc. 622 at 1 n.1. Thus, 347 of the 384 collective action members will receive a portion of the Settlement Payment. Docs. 622-1, 623-1.

[8] Based on the Court's calculations, nearly half the collective action members will receive more than $3,000, roughly forty percent will receive at least $5,000, and approximately sixteen percent will receive over $10,000. *See* Docs. 622-1, 623-1.

fair value given in exchange for the release of claims against the City. Additionally, the Court finds the settlement is fair and reasonable.[9]

C.  **Settlement Payment and Notice to Collective Action Members**

Within fourteen days of this Order being entered, the City shall deliver, via United States mail or hand delivery, checks payable to each collective action member in the amount listed in Exhibit A to the Settlement Agreement. Doc. 622-1; Doc. 623 at 4; Doc. 623-1.[10] If a check is returned as undeliverable, the City shall make all reasonable efforts to locate a new address for the collective action member and redeliver the check.

Each Settlement Payment shall be accompanied by a notice informing the collective action members of the settlement terms, their eligibility to participate in the settlement, what claims they are releasing if they do not return the payment by a date certain, and the option to be excluded from the settlement. Doc. 623 at 4. The parties' proposed notice (Doc. 623-3) shall be revised as follows:

(1)  The reference to "specialty pay," which appears on the top of the second page of the parties' proposed notice, shall be changed to "certification or specialty pay" to mirror the description of the collective action.

(2)  The description of a "Collective Action Member" for purposes of the settlement, which appears on the second page of the parties' proposed notice, must also specify the individual timely consented to join the collective action.

---

[9] The Court's review and approval of the Settlement Agreement is limited to whether the Settlement Agreement complies with the requirements of the FLSA.

[10] The amended motion to approve the settlement represents, "[t]he City will administer the settlement and insure [sic] all checks are sent to Plaintiffs within seven (7) days of delivery." Doc. 622 at 3. Because this statement contradicts the language in the Settlement Agreement, which requires the City to issue the checks within fourteen days of this Order being entered, the Court utilizes the timeframe set forth in the Settlement Agreement. *See* Doc. 623 at 4.

(3) In the section of the parties' proposed notice that sets forth what collective action members are "giving up," the notice must inform the collective action member that the "Agreement," which is referenced in that section, may be obtained by contacting collective action counsel as discussed in section 11 of the notice.

(4) All indications that may give the impression that the notice is being sent directly by the Court – i.e., the Court's name appearing at the top of the first page before the document's title, and the judge's name/signature at the close of the document – must be removed from the document.

(5) In the section entitled "Do I have a lawyer in this case?," a phone number for collective action counsel shall be included.[11]

Additional substantive revisions to the notice must be approved by the Court before being sent to the collective action members.

**D.      Attorneys' Fees**

As part of the settlement reached in this matter, the parties agree the City will pay $300,000.00 to collective action counsel, Raymond Salva, Jr. and his law firm Boyd Kenter Thomas & Parrish LLC, for fees and litigation costs. Doc. 622 at 6-7; Doc. 623 at 3. This amount is in addition to the $1,760,192.83 the City is paying collective action members. Doc. 622 at 3, 6-7; Doc. 623 at 3.

The Eighth Circuit has concluded "judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (finding when parties separately negotiate attorneys' fees without regard to the plaintiff's FLSA claim, the amount an employer pays an employee's counsel "has no

---

[11] The Court is aware a phone number for collective action counsel is provided in a different section in the notice. However, as written, the proposed notice suggests questions about the settlement may only be made via United States mail. Thus, a phone number must be added in the section identifying and providing contact information for collective action counsel.

9

bearing on whether the employer has adequately paid its employees in a settlement."). As set forth in *Barbee v. Big River Steel*, the parties in this matter are "entitled to settle the attorney fee issue, and no law g[ives] the district court authority to interfere with that constitutional right." *Id*. at 1027 (finding the district court lacked authority "to take action on the settled attorney fees."). Pursuant to *Barbee*, this Court is not permitted to act with regard to the settled attorneys' fees in this matter.

Although *Barbee* prohibits district courts from interfering with settled attorneys' fees associated with FLSA settlements, a footnote in *Barbee* indicates this Court retains authority to review attorneys' fees <u>if</u> judicial approval is required for FLSA settlements:

> We note that if FLSA settlements are subject to judicial review, the court would retain the authority to ensure the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and there was no conflict of interest between the attorney and his or her client.

*Id.* at 1027 n.1. In 2021, the Eighth Circuit reiterated this standard. *See Vines*, 9 F.4th at 854. As it did above in section II(B), the Court presumes judicial approval is required. During the March 29, 2022 hearing, collective action counsel and the City's counsel stated the amount of attorneys' fees was negotiated separately, and the amount of attorneys' fees was negotiated without regard to the collective action members' claims. In addition, counsel for the collective action and the City represented they were not aware of any conflict of interest between the collective action members and collective action counsel. Accordingly, to the extent this FLSA settlement is subject to judicial review and this Court retains the authority to review the settled attorneys' fees, the Court approves the amount of attorneys' fees based on the foregoing reasons.

10

Case 4:19-cv-00093-WBG   Document 625   Filed 03/29/22   Page 10 of 11

### III. CONCLUSION

For the reasons stated above, the Court hereby **ORDERS** as follows:

(1) The collective action of firefighters employed by the City who received certification or specialty pay between January 10, 2016, and April 30, 2021, is finally certified;

(2) Raymond Salva, Jr. and his law firm Boyd Kenter Thomas & Parrish LLC are designated as counsel for the collective action;

(3) Plaintiffs' Unopposed Amended Motion to Approve Settlement (Doc. 622) is **GRANTED**;

(4) The parties' proposed notice to collective action members (Doc. 623-3) shall be revised as set forth *supra*, section II(C);

(5) Within the time period set forth in the Settlement Agreement, the City shall deliver the Settlement Payment checks and revised notice to collective action members;

(6) Within the time period set forth in the Settlement Agreement, the City shall pay $300,000.00 to collective action counsel; and

(7) Pursuant to the Settlement Agreement, this matter is hereby **DISMISSED WITH PREJUDICE** with each party to bear his/her/its own costs unless otherwise set forth in the Settlement Agreement. The Court retains jurisdiction with respect to ensuring compliance with the Settlement Agreement.

DATE: March 29, 2022  /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE